**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 12-2209**

_____

COMPANY DOE,

          Plaintiff - Appellee,

     v.

PUBLIC CITIZEN; CONSUMER FEDERATION OF AMERICA; CONSUMERS
UNION,

          Parties-in-Interest – Appellants,

     and

INEZ TENENBAUM, in her official capacity as Chairwoman of
the Consumer Product Safety Commission; CONSUMER PRODUCT
SAFETY COMMISSION,

          Defendants.

------------------------------

AMERICAN CIVIL LIBERTIES UNION FOUNDATION; AARP; ADVANCE
PUBLICATIONS, INCORPORATED; BLOOMBERG, INCORPORATED; DOW
JONES AND COMPANY, INCORPORATED; GANNETT COMPANY,
INCORPORATED; THE NEW YORK TIMES COMPANY; NPR,
INCORPORATED; THE REPORTERS COMMITTEE FOR FREEDOM OF THE
PRESS; TRIBUNE COMPANY; WP COMPANY LLC, d/b/a The
Washington Post,

          Amici Supporting Appellants,

NATIONAL ASSOCIATION OF MANUFACTURERS; THE AMERICAN
COATINGS ASSOCIATION; THE ASSOCIATION OF HOME APPLIANCE
MANUFACTURERS; THE MANUFACTURERS ALLIANCE FOR PRODUCTIVITY
AND INNOVATION; THE RECREATIONAL OFF-HIGHWAY VEHICLE
ASSOCIATION; THE SPECIALTY VEHICLE INSTITUTE OF AMERICA,

          Amici Supporting Appellee.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Alexander Williams, Jr., District Judge. (8:11-cv-02958-AW)

---

Argued: October 31, 2013                    Decided: April 16, 2014

---

Before FLOYD, Circuit Judge, and HAMILTON and DAVIS, Senior Circuit Judges.

---

Vacated in part, reversed in part, and remanded with instructions by published opinion. Judge Floyd wrote the opinion, in which Senior Judge Davis joined. Senior Judge Hamilton wrote a separate opinion concurring in the judgment.

---

**ARGUED:** Scott Matthew Michelman, PUBLIC CITIZEN LITIGATION GROUP, Washington, D.C., for Appellants. Baruch Abraham Fellner, GIBSON, DUNN & CRUTCHER, LLP, Washington, D.C., for Appellee. **ON BRIEF:** Allison M. Zieve, Julie A. Murray, PUBLIC CITIZEN LITIGATION GROUP, Washington, D.C., for Appellants. Thomas M. Johnson, Jr., Amanda C. Machin, GIBSON, DUNN & CRUTCHER, LLP, Washington, D.C., for Appellee. Ben Wizner, Brian M. Hauss, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, New York, New York, for Amicus Curiae American Civil Liberties Union Foundation. Julie Nepveu, AARP FOUNDATION LITIGATION, Michael Schuster, AARP, Washington, D.C., for Amicus Curiae AARP. Cary Silverman, SHOOK, HARDY & BACON L.L.P., Washington, D.C., for Amici Curiae National Association of Manufacturers, American Coatings Association, Association of Home Appliance Manufacturers, Manufacturers Alliance for Productivity and Innovation, Recreational Off-Highway Vehicle Association, and Specialty Vehicle Institute of America. Leslie Moylan, Washington, D.C., Robert D. Balin, Edward J. Davis, Eric Feder, DAVIS WRIGHT TREMAINE LLP, New York, New York, for Amici Curiae Media Organizations.

---

FLOYD, Circuit Judge:

This appeal presents numerous issues relating to transparency in federal courts and the public's constitutional and common-law rights of access to judicial records and documents. The plaintiff in the underlying proceedings, known to the public only as "Company Doe," filed suit under the Administrative Procedure Act to enjoin the United States Consumer Product Safety Commission (the Commission) from publishing in its online, publicly accessible database a "report of harm" that attributes the death of an infant to a product manufactured and sold by Company Doe. The case generated ample media attention, for this was the first legal challenge to the implementation of the Commission's newly minted database mandated by the Consumer Product Safety Improvement Act of 2008. Regrettably, the district court allowed the entire litigation—from filing to judgment—to occur behind closed doors, keeping all documents filed in the case under seal, not even reflected on the public docket. As a result, neither the press nor the public was able to monitor the litigation as it unfolded.

Three months after the district court entered judgment in favor of Company Doe and enjoined the Commission from publishing the challenged report in its online database, the court released its memorandum opinion on the public docket with sweeping redactions to virtually all of the facts, expert testimony, and

3

evidence supporting its decision. Much of the record—including the pleadings, the briefing pertaining to Company Doe's motion for injunctive relief, the Commission's motion to dismiss, the parties' cross-motions for summary judgment, and numerous residual matters—remains sealed in its entirety.

Three consumer advocacy groups—Public Citizen, Consumer Federation of America, and Consumers' Union (collectively Consumer Groups)—filed a post-judgment motion to intervene for the purpose of appealing the district court's sealing order as well as its decision to allow Company Doe to proceed under a pseudonym. The district court, however, neglected to rule on the intervention motion before the period to appeal the underlying judgment expired. Consumer Groups therefore noted their appeal of the district court's sealing and pseudonymity orders as well as the court's "constructive denial" of the motion to intervene. Three months after Consumer Groups filed their notice of appeal, the district court issued an order denying Consumer Groups' motion to intervene.

We hold that Consumer Groups' notice of appeal deprived the district court of jurisdiction to entertain Consumer Groups' motion to intervene, and, therefore, we vacate the district court's order denying intervention. Although Consumer Groups were neither parties to, nor intervenors in, the underlying case before the district court, we nevertheless conclude that they

4

are able to seek appellate review of the district court's sealing and pseudonymity orders because they meet the requirements for nonparty appellate standing and have independent Article III standing to challenge the sealing and pseudonymity orders. As for the merits, we hold that the district court's sealing order violates the public's right of access under the First Amendment and that the district court abused its discretion in allowing Company Doe to litigate pseudonymously. Accordingly, we vacate in part, reverse in part, and remand to the district court with instructions to unseal the case in its entirety.

I.

A.

A brief summary of the relevant statutory and regulatory framework provides the necessary background for this appeal. Congress passed the Consumer Product Safety Improvement Act of 2008 (CPSIA or the Act) to establish more stringent safety and testing standards for manufacturers of children's products. CPSIA, Pub. L. No. 110-314, 122 Stat. 3016 (2008); 15 U.S.C. § 2051(a)(1). To enhance public access to product safety information, the Act required the Commission, the federal regulatory agency responsible for the implementation and enforcement of the Act, to create and maintain a publicly

5

accessible, Internet database containing "[r]eports of harm" about product safety. 15 U.S.C. § 2055a(a)(1)(A)-(C), (b)(1). The purpose of the database was to provide consumers an avenue to report safety hazards about specific consumer products and to learn of and evaluate the potential dangers posed by products that had entered the stream of commerce. See H.R. Rep. No. 110-501, at 34 (2007).

Recognizing that inaccurate or erroneous information would thwart the intended goals for the database, Congress engrafted into the statute certain safeguards aimed at excluding misleading material. The Act, for example, establishes minimum requirements that reports must meet to be included in the database and provides manufacturers the right to receive notice of a report prior to its publication. See 15 U.S.C. § 2055a. One such minimum requirement is that the harm described in the report must "relat[e] to the use of the consumer product." Id. § 2055a(b)(2)(B)(iii). A manufacturer has an opportunity to object to the inclusion of information that it believes to be materially inaccurate or confidential. Id. § 2055a(c)(2). The Commission's promulgated regulations define "materially inaccurate information" as "information that is false or misleading, and which is so substantial and important as to affect a reasonable consumer's decision making about the product." 16 C.F.R. § 1102.26(a)(1). If a manufacturer submits

6

a claim that a report is materially inaccurate and the Commission substantiates the manufacturer's claim, the Commission must either correct the inaccuracy or exclude the materially inaccurate information from the database. 15 U.S.C. § 2055a(c)(4). To avoid delays in making reports available to the public, the Commission is required to publish a report within twenty business days of receipt of the report. Id. § 2055a(c)(1), (c)(3)(A), (c)(4)(A).

B.

The underlying case stems from a report of harm received by the Commission from an unidentified local government agency concerning a product manufactured by Company Doe. Upon transmittal of the report, Company Doe submitted a claim that the report was materially inaccurate, asserting that the Commission should not publish the report in its online database because it contained confusing and contradictory statements that rendered the information materially inaccurate within the meaning of the Act and the Commission's regulations. The Commission attempted to correct the report by redacting certain information that it deemed materially inaccurate, but Company Doe insisted that the report remained unpublishable due to the material inaccuracies. The Commission proposed multiple versions of the report in its endeavor to purge the materially

7

inaccurate information, but the parties ultimately reached an impasse as to whether the report satisfied the requisite criteria to be included in the database. When the Commission signaled its intent to publish the report, Company Doe filed suit to enjoin the Commission from including the report of harm in the database.

Company Doe filed with its complaint a motion to litigate the case under seal and to proceed under a pseudonym. It claimed that exposing the content of the challenged report of harm through court documents would vitiate the very relief it sought to obtain by filing suit. Disclosure of its identity as well as any facts that would enable the public to link its product to the harm alleged in the report, Company Doe argued, would have the same effect as disclosure via the Commission's database.

The district court's local rules prohibited the court from ruling on the motion to seal for at least fourteen days to allow interested parties to object to the sealing request. The local rules also required that the suit remain sealed pending resolution of the sealing motion. Both Consumer Groups and the Commission filed objections to the motion to seal, maintaining that Company Doe's sealing request was overbroad and, if countenanced, would violate the public right of access to court documents. Although they were not named parties to the

underlying litigation, Consumer Groups also filed a motion to unseal the briefing related to Company Doe's sealing motion. Despite the objections to Company Doe's sealing motion, the district court failed to rule on the motion for nine months, at which time it issued its memorandum opinion adjudicating the parties' summary judgment motions. As a result, the entire litigation—which included Company Doe's motion for a preliminary injunction, the Commission's motion to dismiss, Company Doe's motion to amend the complaint, the parties' motions for summary judgment, and oral argument—occurred under seal.

On the parties' cross-motions for summary judgment, the district court entered judgment in favor of Company Doe. In doing so, the court found that the challenged report of harm failed to describe a harm or risk "relating to the use" of Company Doe's product as required by the Act and that the information contained in the report was materially inaccurate. It therefore concluded that the Commission's decision to publish the report of harm was arbitrary and capricious and an abuse of discretion. The district court further found that publication of the materially inaccurate report risked harm to Company Doe's reputational and pecuniary interests. Accordingly, the court permanently enjoined the Commission from publishing the report in the online database.

9

After adjudicating the merits of Company Doe's claims, the district court addressed Company Doe's motion to seal and to proceed under a pseudonym. The court acknowledged the presumption favoring public access to judicial documents but determined that Company Doe's interest "in preserving its reputational and fiscal health" outweighed the public's "abstract interest" in obtaining information about the lawsuit. The district court reasoned that permanent sealing of certain documents and pseudonymity were necessary because drawing public attention to the report was the consequence Company Doe sought to avoid in bringing its suit. To hold otherwise, the district court believed, would "reduce [Company Doe's] First Amendment interest in petitioning the Court for redress of its grievance to a Hobson's choice, a figurative fork that would fly in the face of fundamental notions of fairness." Accordingly, the court denied Consumer Groups' motion to unseal, overruled their objections to Company Doe's sealing motion, and granted Company Doe's motion to proceed under a pseudonym.

Recognizing that the public retained some "residual interest" in accessing its memorandum opinion and that the First Amendment public right of access likely attached to some of the documents filed in the litigation, the district court refused to seal the entire case. Instead, it ordered Company Doe to propose redactions to information that, if disclosed, would harm

10

Company Doe's reputation, explaining that Company Doe was in the "best position to determine what level of redaction . . . [would] suffice to balance the competing interests." The court noted that it "prognosticated the propriety of heavy redactions" and even wholesale sealing of certain records, documents, and evidence filed in the proceedings.

Company Doe thereafter filed a response to the district court's order and proposed redactions to the court's memorandum opinion as well as other documents filed in the litigation. The Commission objected to Company Doe's redactions as overbroad and submitted redactions of its own. After considering the parties' submissions, the district court adopted the redactions proposed by Company Doe and rejected the Commission's redactions, citing concern that the public would be able to uncover Company Doe's identity and link Company Doe to the challenged report.

Three months after the district court entered judgment in favor of Company Doe, the court released its memorandum opinion on the public docket with significant redactions to its analysis, the underlying facts, and the expert opinion testimony upon which its conclusions relied. As noted above, numerous documents remain completely sealed, not even reflected on the public docket.

C.

On August 7, 2012, seven days after the district court issued its opinion granting Company Doe's motion for summary judgment, partially granting the motion to seal, and granting Company Doe's motion to proceed under a pseudonym, Consumer Groups filed a post-judgment motion to intervene for the purpose of appealing the district court's sealing and pseudonymity orders. The district court failed to rule on the intervention motion before the period to appeal the underlying judgment expired, causing Consumer Groups to appeal the "constructive denial" of their motion to intervene as well as the court's sealing and pseudonymity rulings. The Commission filed a notice of appeal of the district court's adverse judgment.

On October 9, 2012, the district court issued a nunc pro tunc order granting Consumer Groups' motion to intervene, noting that Company Doe did not oppose the motion. Company Doe thereafter requested that the district court modify its October 9 order to reflect that its consent to Consumer Groups' intervention hinged upon the continuance of a case or controversy between the original parties and that it might wish to object to the motion in the event the Commission abandoned its appeal. The district court approved Company Doe's request for clarification, stating that its October 9 order was conditioned upon Company Doe's lack of opposition and that

12

Company Doe could file a motion asking the court to reconsider its previous order granting the motion to intervene in the event that it subsequently desired to oppose the intervention motion.

On December 7, 2012, the Commission withdrew its appeal of the district court's judgment, and Company Doe promptly moved for the district court to reconsider its October 9 order. On January 14, 2013, more than three months after Consumer Groups filed their notice of appeal, the district court granted Company Doe's motion to reconsider and revoked Consumer Groups' intervention, concluding that intervention was improper because the underlying merits of the dispute and the sealing orders were "inextricably intertwined," and, therefore, Consumer Groups' objections to the sealing order became moot when the district court enjoined the Commission from including the report in its online database.

On January 16, 2013, Consumer Groups filed an amended notice of appeal encompassing the district court's January 14 order as well as the district court's rulings on Company Doe's motions to seal and to proceed under a pseudonym. Company Doe subsequently filed a motion to dismiss the appeal.

## II.

Before proceeding to the merits of Consumer Groups' arguments, we first must address several threshold issues that

13

threaten our power to entertain this appeal. In its motion to dismiss Consumer Groups' appeal, Company Doe maintains that Consumer Groups are unable to seek appellate review of the district court's sealing and pseudonymity rulings because (1) they were neither parties to, nor intervenors in, the underlying action, and (2) they lack Article III standing. Consumer Groups counter that they are proper appellants because the district court abused its discretion in denying their motion to intervene or, alternatively, because they satisfy the requirements for nonparty appellate standing. Consumer Groups further argue that the denial of access to documents filed in the proceedings below is a concrete injury sufficient to make their claims on appeal justiciable. A prior motions panel deferred ruling on the motion to the merits panel. For the reasons set forth below, we reject Company Doe's arguments and deny its motion to dismiss the appeal.

A.

As a general rule, only named parties to the case in the district court and those permitted to intervene may appeal an adverse order or judgment. See Marino v. Ortiz, 484 U.S. 301, 304 (1988) (per curiam). Indeed, it is typically only parties who are bound by a judgment and sufficiently aggrieved by it who possess constitutional and prudential standing to seek appellate

14

review of the district court's decision.  See Newberry v. Davison Chem. Co., 65 F.2d 724, 729 (4th Cir. 1933) ("[I]t is only a party affected by an order or decree who may appeal from it.").  In this case, however, we have no appeal from a named party or successful intervenor.  The Commission and its chairwoman were the only named party-defendants to the underlying proceedings, and they abandoned their appeal of the district court's judgment in favor of Company Doe.  Although Consumer Groups sought intervention before the district court, the court denied the motion to intervene.  Thus, because Consumer Groups were neither parties to, nor intervenors in, the proceedings before the district court, Company Doe argues that no case or controversy exists and that we lack authority to hear Consumer Groups' challenge to the district court's sealing and pseudonymity orders.

Whether Consumer Groups may appeal the sealing and pseudonymity orders rests, in part, upon the propriety of the district court's denial of Consumer Groups' motion to intervene. That is, Consumer Groups have standing to appeal the denial of their intervention motion, see Hill v. W. Elec. Co., 672 F.2d 381, 385-86 (4th Cir. 1982), and if we conclude the district court erred in its decision to deny intervention, then Consumer Groups' newfound intervenor status in light of our holding would supply an ongoing, adversarial case or controversy, thereby

15

allowing us to review Consumer Groups' challenges to the district court's sealing and pseudonymity rulings, see Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Phillips Corp., 510 U.S. 27, 34 (1993) (per curiam) (dismissing writ of certiorari as improvidently granted but explaining that, if the Supreme Court reversed the lower court's denial of the motion to intervene, the Court "could address the merits of the question on which [it] . . . granted certiorari"); see also Ross v. Marshall, 426 F.3d 745, 761 & n.68 (5th Cir. 2005) (reversing denial of intervention motion and entertaining the merits of intervenors' claims on appeal); Crawford v. Equifax Payment Servs., Inc., 201 F.3d 877, 879, 881-82 (7th Cir. 2000) (same). We therefore turn to the district court's order denying Consumer Groups' motion to intervene, first considering whether the district court had authority to rule on the motion at all.

1.

Consumer Groups filed their motion to intervene on August 7, 2012, seven days after the district court entered judgment in favor of Company Doe. As noted above, the district court failed to rule on the motion before the period to appeal the underlying judgment expired. After Consumer Groups filed their notice of appeal, the district court undertook a series of actions on the intervention motion, which had the purported effect of first

16

granting, then conditionally granting, and ultimately denying the motion on January 14, 2013. It is the district court's January 14 order denying intervention that is before us on review.

Generally, a timely filed notice of appeal transfers jurisdiction of a case to the court of appeals and strips a district court of jurisdiction to rule on any matters involved in the appeal. See Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982) (per curiam). This rule fosters judicial economy and guards against the confusion and inefficiency that would result if two courts simultaneously were considering the same issues. See 20 James Wm. Moore et al., Moore's Federal Practice § 3902.1 (3d ed. 2010). We have recognized limited exceptions to the general rule that permit district courts to take subsequent action on matters that are collateral to the appeal, Langham-Hill Petroleum Inc. v. S. Fuels Co., 813 F.2d 1327, 1330-31 (4th Cir. 1987), or to take action that aids the appellate process, Grand Jury Proceedings Under Seal v. United States, 947 F.2d 1188, 1190 (4th Cir. 1991). As our case law amply demonstrates, however, these exceptions are confined to a narrow class of actions that promote judicial efficiency and facilitate the division of labor between trial and appellate courts. See, e.g., Lytle v. Griffith, 240 F.3d 404, 407 n.2 (4th Cir. 2001) (concluding that the district court's limited

17

modification of an injunction appropriately "aided in th[e] appeal by relieving [the court] from considering the substance of an issue begotten merely from imprecise wording in the injunction"); Fobian v. Storage Tech. Corp., 164 F.3d 887, 890 (4th Cir. 1999) (holding that a district court is authorized, under the in aid of appeal exception, to entertain a Rule 60(b) motion after a party appeals the district court's judgment); Grand Jury Proceedings Under Seal, 947 F.2d at 1190 (holding that the district court retained jurisdiction to memorialize its oral opinions soon after a decision was rendered).

Here, the district court found that it had authority, under the "in aid of appeal" exception, to act on the intervention motion after Consumer Groups noticed their appeal, a finding neither Consumer Groups nor Company Doe directly challenges on appeal. Notwithstanding the parties' acquiescence to the district court's jurisdictional determination, we have an independent obligation to address a lower court's jurisdiction to issue a ruling we are reviewing on appeal. See Arizonans for Official English v. Arizona, 520 U.S. 43, 73 (1997); Stephens v. Cnty. of Albemarle, 524 F.3d 485, 490 (4th Cir. 2008).

Whether a district court retains jurisdiction to rule on a motion to intervene following a notice of appeal is a matter of first impression in this Circuit. The majority of our sister circuits that have confronted this issue have applied the

18

general jurisdiction-stripping rule to hold that an effective notice of appeal deprives a district court of authority to entertain a motion to intervene after the court of appeals has assumed jurisdiction over the underlying matter. See Taylor v. KeyCorp, 680 F.3d 609, 617 (6th Cir. 2012); Drywall Tapers & Pointers of Greater N.Y., Local Union 1974 v. Natasi & Assocs. Inc., 488 F.3d 88, 94-95 (2d Cir. 2007); Roe v. Town of Highland, 909 F.2d 1097, 1100 (7th Cir. 1990); Nicol v. Gulf Fleet Supply Vessels, Inc., 743 F.2d 298, 299 (5th Cir. 1984). We see no reason why an intervention motion should be excepted from the general rule depriving the district court of authority to rule on matters once the case is before the court of appeals. Accordingly, we join the majority of our sister circuits and hold that an effective notice of appeal divests a district court of jurisdiction to entertain an intervention motion.

We further conclude that the "in aid of appeal" exception is inapposite in this case. After Consumer Groups appealed the district court's "constructive denial" of their motion to intervene, the court undertook multiple actions on Consumer Groups' intervention motion. The district court's final ruling revoking its prior grant of intervention came three months after Consumer Groups noted their appeal and one month after they filed their opening brief. A district court does not act in aid of the appeal when it "alter[s] the status of the case as it

rests before the court of appeals." Coastal Corp. v. Tx. E. Corp., 869 F.2d 817, 820 (5th Cir. 1989); see also Fobian, 164 F.3d at 890-91 (concluding that a district court's grant of Rule 60(b) relief after an appeal of the underlying judgment has been taken "cannot be considered in furtherance of the appeal" because "two courts would be exercising jurisdiction over the same matter at the same time"). By continuing to act on Consumer Groups' motion to intervene after we assumed jurisdiction over the matter and briefing had commenced, the district court purported to change the status of the appeal. In doing so, it acted outside its authority.

Thus, we hold that Consumer Groups' notice of appeal deprived the district court of authority to rule on Consumer Groups' motion to intervene. Accordingly, we vacate the district court's January 14 order denying intervention on the merits. See Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986) ("When the lower federal court lacks jurisdiction, we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit." (brackets omitted) (quoting United States v. Corrick, 298 U.S. 435, 440 (1936))).

2.

Because the district court lacked jurisdiction to entertain Consumer Groups' motion to intervene, we next must address whether Consumer Groups, as nonparties, may appeal the district court's sealing and pseudonymity orders. Consumer Groups maintain they are entitled to pursue this appeal in the Commission's absence because they satisfy the requirements for nonparty appellate standing announced in Kenny v. Quigg, 820 F.2d 665 (4th Cir. 1987).

The rule that only original parties and intervenors to the action before the district court may appeal an adverse judgment is not absolute. We have recognized an exception to the general rule that permits a nonparty to appeal a district court's order or judgment when the appellant (1) possessed "an interest in the cause litigated" before the district court and (2) "participated in the proceedings actively enough to make him privy to the record." Kenny, 820 F.2d at 668. To satisfy the requirements for nonparty appellate standing, the appellant must have some cognizable interest that is affected by the district court's judgment or order. See Davis v. Scott, 176 F.3d 805, 807-08 (4th Cir. 1999). By restricting nonparty appeals to only those individuals who sufficiently participate in the proceedings before the district court and have some concrete interest that is adversely affected by the trial court's judgment or ruling,

21

we address the prudential standing concerns that arise when a nonparty seeks to appeal from a district court's judgment. See Castillo v. Cameron Cnty., 238 F.3d 339, 349 & n.16 (5th Cir. 2001); see also Allen v. Wright, 468 U.S. 737, 751 (1984) (prudential standing requirements include "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked").

This Court first addressed and applied the standard for nonparty appellate standing in Kenny. There, the Secretary of Labor filed suit against an employee stock-ownership plan, alleging the sale of stock to the plan's trustees violated the Employee Retirement Income Security Act of 1974. 820 F.2d at 666-67. Kenny, who was a participant in the plan but not a named party to the proceedings before the district court, filed objections to the plan's motion to approve the sale of stock. Id. at 667-68. When the district court overruled her objections and approved the proposed sale, only Kenny appealed. Id. at 668. We permitted Kenny to appeal in the Department of Labor's absence, noting that she "participated significantly in the proceedings below" by filing "her own memorandum opposing approval of the sale," which the district court fully considered

22

and rejected.  Id.  We also found that Kenny's financial stake in the plan gave her an interest in the proceedings sufficient to confer nonparty appellate standing.  Id.

Consumer Groups' involvement in the underlying proceedings is no different.  They participated in the case below by objecting, under the district court's local rules, to Company Doe's motions to seal and to proceed pseudonymously and by filing their own motion to unseal.  Although Consumer Groups had not sought formal intervention to challenge the sealing and pseudonymity requests prior to entry of summary judgment, the district court fully considered, and overruled, Consumer Groups' objections when addressing the merits of Company Doe's motion to seal and to proceed under a pseudonym.  As in Kenny, Consumer Groups' participation before the district court—as it pertains to the issues of sealing and pseudonymity—was akin to party participation.

Company Doe suggests that Consumer Groups' involvement in the proceedings below falls short of the participation necessary to establish nonparty appellate standing because they failed to substantially participate in the underlying litigation on the merits.  Consumer Groups, however, do not challenge the district court's entry of judgment in favor of Company Doe.  Instead, they appeal only the district court's rulings on sealing and pseudonymity, which are the very issues they contested below and

23

were affected by. Consumer Groups participated in the proceedings before the district court to the greatest extent possible given that the litigation proceeded in secret. Numerous courts have found participation similar to that of Consumer Groups adequate to permit a nonparty to appeal. See, e.g., Kaplan v. Rand, 192 F.3d 60, 66-67 (2d Cir. 1999) (permitting nonparty shareholder to appeal award of legal fees to counsel for stockholder's derivative action because shareholder objected to the fee award before the district court); Commodity Futures Trading Comm'n v. Topworth Int'l, Ltd., 205 F.3d 1107, 1113-14 (9th Cir. 1999) (finding sufficient participation based upon nonparty's formal objection to receiver's proposed distribution plan); Binker v. Pennsylvania, 977 F.2d 738, 745 (3d Cir. 1992) (concluding that nonparty appellants sufficiently participated in proceedings below by asserting objections to settlement agreement). We conclude that, by lodging objections to Company Doe's motions to seal and to proceed under a pseudonym, and by filing their own motion to unseal, Consumer Groups sufficiently participated in the proceedings before the district court to appeal the court's orders dismissing their objections and permitting the case to be litigated under seal and pseudonymously.

Having determined that Consumer Groups satisfy the first Kenny prong, we turn next to the second requirement for nonparty

24

appellate standing, asking whether a nonparty who claims a right of access to judicial documents and objects to a sealing motion and request to proceed under a pseudonym possesses an interest in the underlying proceedings sufficient to appeal a district court's order overruling the nonparty's objections and sealing portions of the record.

We conclude that the presumptive right of access to judicial documents and materials under the First Amendment and common law gives Consumer Groups an interest in the underlying litigation such that they may appeal the district court's orders disregarding their objections and depriving them of access to the information they claim a right to obtain. The district court's rejection of Consumer Groups' proffered objections to the sealing motion and pseudonymity request is tantamount to an adjudication of their rights of access. See United States v. Antar, 38 F.3d 1348, 1363 (3d Cir. 1994) ("[T]he district judge appears not to have recognized that maintaining the transcripts under seal, though a passive act, was an active decision requiring justification under the First Amendment."). Significantly, Consumer Groups are bound by the district court's denial of access and concomitant determination of their rights. To deprive Consumer Groups of the right to appeal the district court's adverse ruling on their objections would leave no possible avenue for them to vindicate their asserted First

Amendment and common-law rights of access, which are interests that diverge from those of the named parties who had access to the documents filed in the litigation as well as the identity of Company Doe. Cf. United States v. Hickey, 185 F.3d 1064, 1066 (9th Cir. 1999) (rejecting the proposition that a named party has standing to vindicate the public's right of access). Thus, appealing the district court's sealing and pseudonymity determinations is the only way Consumer Groups can protect themselves from being bound by the adjudication of their rights of access that they believe were violated. Because the orders from which Consumer Groups appeal deprive Consumer Groups of the very information they claim a right to inspect, their appeal falls squarely within the exception allowing nonparties to seek appellate review when necessary to preserve their rights. See Davis, 176 F.3d at 808.

Company Doe argues that Consumer Groups lack the requisite interest to appeal the district court's sealing order because the local rule under which Consumer Groups submitted objections serves only as a public notice provision and does not confer party status that would permit a third party to appeal a district court's rejection of its objections. True enough, but a nonparty's right to seek appellate review of an order that disposes of his rights and by which he is bound does not depend upon some explicit authorization to appeal. In Delvin v.

26

_Scardelletti_, for example, the Supreme Court held that an unnamed class member who timely objects to a proposed class action settlement may appeal the district court's approval of the settlement without seeking formal intervention in the underlying proceedings. 536 U.S. 1, 14 (2002). In doing so, the Court concluded that the petitioner was able to seek appellate review of the district court's order disregarding his objections because he (1) participated in the district court proceedings, (2) was bound by the court's order overruling his submitted objections, and (3) possessed interests that would not be adequately represented on appeal by the named parties. See _id._ at 7-9. Although "no federal statute or procedural rule directly addresses who may appeal from approval of class action settlements," the Court observed, "the right to appeal from an action that finally disposes of one's rights has a statutory basis." _Id._ at 13 (citing 28 U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . .")). As in _Delvin_, the district court's order overruling Consumer Groups' objections and granting Company Doe's motions to seal and to proceed pseudonymously constitutes a final decision with respect to Consumer Groups' rights of access sufficient to trigger their right to appeal. We therefore hold that, because they objected to Company Doe's motion to seal and

27

to proceed under a pseudonym, Consumer Groups may appeal the district court's adverse sealing and pseudonymity rulings without first intervening in the underlying proceedings.

B.

We turn now to the final threshold issue presented by Company Doe's motion to dismiss. Company Doe contends that Consumer Groups lack standing under Article III to pursue appellate review of the district court's sealing and pseudonymity orders. Specifically, Company Doe argues that Consumer Groups lack a concrete and particular injury necessary to confer Article III standing. Because the Commission abandoned its appeal of the district court's judgment and Consumer Groups have no judicially cognizable injury of their own, Company Doe asserts that no justiciable case or controversy exists.

To satisfy the requirements for constitutional standing, the party invoking federal court jurisdiction must demonstrate "that the conduct of which he complains has caused him to suffer an 'injury in fact' that a favorable judgment will address." Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 12 (2004) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). Article III standing "must be met by persons seeking appellate review, just as it must be met by persons appearing in

28

courts of first instance." Arizonans for Official English, 520 U.S. at 64. Accordingly, an intervenor may not pursue an appeal in the absence of an original party on whose side intervention was permitted unless the intervenor independently satisfies the requirements for constitutional standing. Id. at 65.

This Court has previously permitted news organizations to intervene in actions in which they were not otherwise parties to challenge a district court's sealing order. See Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 172, 178 (4th Cir. 1988); Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 252-54 (4th Cir. 1988). In those cases, the news organizations had an interest in the sealed judicial documents and materials sufficient to satisfy the constitutional standing requirements of injury, causation, and redressability. They were bound by the district court's sealing orders, and insofar as they were denied access to judicial documents that they claimed a right to obtain, they were aggrieved by the district court's sealing determination. A favorable decision on appeal would ameliorate their injuries by providing them access to the records that they sought. In sum, it was the news organizations' failure to obtain information—information, which in their view, they had a right to access under the common law or the Constitution—that supplied the case or controversy necessary for the intervenors to secure appellate review of a district court's sealing orders.

Company Doe attempts to distinguish the above cases on the ground that they involved media parties that had a First Amendment right to inform public discourse. We see no reason why the standing of news media to seek appellate review of a district court's sealing order should differ from that of a member of the general public. The public right of access has two dimensions. First, the right protects the public's ability to oversee and monitor the workings of the Judicial Branch. See Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co., 203 F.3d 291, 303 (4th Cir. 2000) ("Publicity of such records, of course, is necessary in the long run so that the public can judge the product of the courts in a given case."); see also Pepsico, Inc. v. Redmond, 46 F.3d 29, 31 (7th Cir. 1995) (Easterbrook, J., in chambers) ("Opinions are not the litigants' property. They belong to the public, which underwrites the judicial system that produces them."). Second, public access to the courts promotes the institutional integrity of the Judicial Branch. See United States v. Cianfrani, 573 F.2d 835, 851 (3d Cir. 1978) ("Public confidence [in the judiciary] cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view."). In light of the interests served by the public right of access, we have recognized that "the rights of the news media

30

. . . are coextensive with and do not exceed those rights of members of the public in general." In re Greensboro News Co., 727 F.2d 1320, 1322 (4th Cir. 1984); see also Branzburg v. Hayes, 408 U.S. 665, 684 (1972) ("[T]he First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally."). Instead, the right of access is widely shared among the press and the general public alike, such that anyone who seeks and is denied access to judicial records sustains an injury.

Article III standing demands that a litigant demonstrate "an invasion of a legally protected interest" that is "concrete and particularized" and "'actual or imminent.'" Lujan, 504 U.S. at 560 (quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)). Standing, the Supreme Court has instructed, "is not to be placed in the hands of 'concerned bystanders,' who will use it simply as a 'vehicle of the vindication of value interests.'" Diamond v. Charles, 476 U.S. 54, 62 (1986) (quoting United States v. SCRAP, 412 U.S. 669, 687 (1973)). Thus, a mere generalized grievance shared by the public at large is insufficient to establish a justiciable case or controversy. See Lujan, 504 U.S. at 573-74.

That an injury may be widely shared, however, does not automatically render it unsuitable for Article III standing. Even a widely shared interest, "where sufficiently concrete, may

31

count as an 'injury in fact.'" FEC v. Akins, 524 U.S. 11, 24 (1998). The Supreme Court consistently has held that a plaintiff suffers an Article III injury when he is denied information that must be disclosed pursuant to a statute, notwithstanding "[t]he fact that other citizens or groups of citizens might make the same complaint after unsuccessfully demanding disclosure." Pub. Citizen v. U.S. Dep't of Justice, 491 U.S. 440, 449-50 (1989); see also Akins, 524 U.S. at 21-25 (holding that a group of voters had a concrete injury based upon their inability to receive certain donor and campaign-related information from an organization); Havens Realty Corp. v. Coleman, 455 U.S. 363, 373-74 (1982) (concluding that deprivation of information about housing availability was sufficient to constitute an Article III injury). What each of these cases has in common is that the plaintiffs (1) alleged a right of disclosure; (2) petitioned for access to the concealed information; and (3) were denied the material that they claimed a right to obtain. Their informational interests, though shared by a large segment of the citizenry, became sufficiently concrete to confer Article III standing when they sought and were denied access to the information that they claimed a right to inspect.

Although Consumer Groups' right of access stems not from a statute but from the Constitution and common law, the nature of

32

their alleged injury is indistinguishable from the informational harm suffered by the plaintiffs in the above cases. Consumer Groups' injury is formed by their inability to access judicial documents and materials filed in the proceedings below, information that they contend they have a right to obtain and inspect under the law. Because the public right of access under the First Amendment and common law protects individuals from the very harm suffered by Consumer Groups, their injury transcends a mere abstract injury such as a "common concern for obedience to law." L. Singer & Sons v. Union Pac. R.R. Co., 311 U.S. 295, 303 (1940). Consumer Groups are public interest organizations that advocate directly on the issues to which the underlying litigation and the sealed materials relate. By seeking, and having been denied access to, documents they allege a right to inspect, Consumer Groups have a direct stake in having a concrete injury redressed.

One final point merits our attention. Company Doe argues that, because it prevailed on its claims before the district court and secured an injunction barring the Commission from publishing the challenged report of harm, Consumer Groups cannot stand in the Commission's shoes and seek appellate review of the district court's sealing order, which was necessary to effectuate the district court's judgment. In support of this contention, Company Doe directs us to Diamond v. Charles, 476

U.S. 54 (1986), and Hollingsworth v. Perry, 133 S. Ct. 2652 (2013).

In Diamond, a pediatrician who was licensed to practice medicine in Illinois, and who was a "conscientious object[or] to abortions," sought to defend the constitutionality of a state statute governing abortions after the state elected not to appeal an injunction enjoining enforcement of certain provisions of the statute. 476 U.S. at 57-58. The state Attorney General filed a letter with the Supreme Court stating that his interest in the continued proceedings was "essentially co-terminous with the position on the issues set forth by the [petitioner]." Id. at 61 (internal quotation marks omitted). The Court, however, held that the petitioner lacked constitutional standing to appeal the lower court's decision because only the state possessed a direct stake in defending the constitutionality of its statute. Id. at 65. Because the petitioner had no judicially cognizable interest of his own in the challenged statute, he had no standing to appeal the judgment below in the absence of the state. Id. at 71.

In Hollingsworth, the proponents of a ballot initiative that amended the California constitution to define marriage as between one man and one woman sought to defend the law's constitutionality after the named defendants—a group of state and local officials responsible for enforcing California's

34

marriage laws—refused to defend the law. 133 S. Ct. at 2660. The Supreme Court held that the proponents lacked standing because they had no personal stake in defending the law's enforcement that was distinct from the general interest of every California citizen. Id. at 2663. Because the proponents did not represent the State, they could not assert the State's interests. Id. at 2664-66.

Diamond and Hollingsworth illustrate that an intervenor's right to continue a suit on appeal in the absence of the original party on whose side intervention was sought is dependent upon the intervenor having an independent interest in the proceedings sufficient to satisfy the requirements for Article III standing. In both cases, the requisite injury in fact was lacking because the intervening parties did not have a direct stake in defending the constitutionality of a state statute when state officials declined to do so. Consumer Groups, by contrast, do not appeal the merits of the district court's decision to enjoin the Commission from publishing the report of harm in its online database, nor do they attempt to assert an interest that belongs only to the Commission. Their interest in the litigation is that of a third party seeking access to documents filed with the court, which is an interest entirely independent of the injury that supplied the requisite case or controversy between Company Doe and the Commission.

35

Consumer Groups have a redressable, actual injury and a personal stake sufficient to make their claims justiciable.

We conclude that Consumer Groups' participation before the district court on the issues of sealing and pseudonymity, coupled with their redressable injuries, create an ongoing, adversarial case or controversy vis-à-vis Company Doe, whose interests in maintaining the documents under seal are adverse to those of Consumer Groups. Thus, having determined that Consumer Groups have nonparty appellate standing and independent Article III standing to seek appellate review of the district court's sealing and pseudonymity orders, we deny Company Doe's motion to dismiss this appeal and turn next to the merits of Consumer Groups' arguments.

III.

It is well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings. See Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 580 n.17 (1980); Nixon, 435 U.S. at 597; Media Gen. Operations, Inc. v. Buchanan, 417 F.3d 424, 428 (4th Cir. 2005). The right of public access springs from the First Amendment and the common-law tradition that court proceedings are presumptively open to public scrutiny. Va. Dep't of State Police v. Wash. Post, 386 F.3d

567, 575 (4th Cir. 2004). "The distinction between the rights of access afforded by the common law and the First Amendment is significant, because the common law does not afford as much substantive protection to the interests of the press and the public as does the First Amendment." In re United States for an Order Pursuant to 18 U.S.C. Section 2703, 707 F.3d 283, 290 (4th Cir. 2013) (quoting Va. Dep't of State Police, 386 F.3d at 575) (internal quotation marks omitted). The common-law presumptive right of access extends to all judicial documents and records, and the presumption can be rebutted only by showing that "countervailing interests heavily outweigh the public interests in access." Rushford, 846 F.2d at 253. By contrast, the First Amendment secures a right of access "only to particular judicial records and documents," Stone, 855 F.2d at 180, and, when it applies, access may be restricted only if closure is "necessitated by a compelling government interest" and the denial of access is "narrowly tailored to serve that interest," In re Wash. Post Co., 807 F.2d 383, 390 (4th Cir. 1986) (quoting Press-Enter. Co. v. Superior Court, 464 U.S. 501, 510 (1984) (internal quotation marks omitted)).

We have cautioned district courts that the right of public access, whether arising under the First Amendment or the common law, "may be abrogated only in unusual circumstances." Stone, 855 F.2d at 182. As explained above, public access promotes not

37

only the public's interest in monitoring the functioning of the courts but also the integrity of the judiciary.  See Columbus-Am. Discovery Grp., 203 F.3d at 303.  "Public access serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of fairness."  Littlejohn v. Bic Corp., 851 F.2d 673, 682 (3d Cir. 1988).  As Judge Easterbrook, writing for the Seventh Circuit, stated: "The political branches of government claim legitimacy by election, judges by reason.  Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like a fiat and requires rigorous justification."  Hicklin Eng'g, L.C. v. Bartell, 439 F.3d 346, 348 (7th Cir. 2006).

With these principles in mind, we turn to Consumer Groups' arguments on appeal.

A.

Consumer Groups argue that the First Amendment right of access applies to all of the documents sealed by the district court and that the court erred in determining that Company Doe demonstrated a compelling interest that justified sealing the materials.  Company Doe counters that the First Amendment is inapplicable to the materials filed before the district court

38

and, even if it does extend to some of the documents, Company Doe has a compelling interest sufficient to defeat the First Amendment presumptive right of access.

When presented with a sealing request, our right-of-access jurisprudence requires that a district court first "determine the source of the right of access with respect to each document, because only then can it accurately weigh the competing interests at stake." Va. Dep't of State Police, 386 F.3d at 576 (brackets omitted) (quoting Stone, 855 F.2d at 181 (internal quotation marks omitted)). Although the district court ordered that some of the materials be unsealed after Consumer Groups noted their appeal, our review of the record reveals that the following categories of documents remain sealed in their entireties: (1) the pleadings and attachments thereto; (2) the motions, related briefing, and exhibits supporting (i) Company Doe's motion for a preliminary injunction, (ii) the Commission's motion to dismiss, (iii) Company Doe's motion to amend its complaint, and (iv) the parties' cross-motions for summary judgment; and (3) the amended pleadings as well as numerous other residual matters. None of these sealed documents appear on the public docket. Further, in addition to these materials, the district court released its memorandum opinion on the public docket with redactions to virtually all of the facts, the court's analysis, and the evidence supporting its decision.

39

1.

We begin with the district court's redactions to its memorandum opinion as well as its wholesale sealing of the parties' summary judgment motions and accompanying materials. We have squarely held that the First Amendment right of access attaches to materials filed in connection with a summary judgment motion. See Rushford, 846 F.2d at 252-53. Although we have not addressed whether the First Amendment right of access extends to a judicial opinion ruling on a summary judgment motion, we have little difficulty in concluding that it does.

In In re Washington Post Co., we held that the right of access under the First Amendment applied to documents filed in connection with plea and sentencing hearings in criminal cases, reasoning that the First Amendment right of access extends to materials submitted in conjunction with judicial proceedings that themselves would trigger the right to access. 807 F.2d at 390 ("Because we conclude that the more rigorous First Amendment standard should apply in this context, we hold that the First Amendment right of access applies to documents filed in connection with plea hearings and sentencing hearings in criminal cases, as well as to the hearings themselves."). Our decision in In re Washington Post Co. recognized the right of access to documents as "a necessary corollary of the capacity to attend the relevant proceedings." Hartford Courant Co. v.

40

Pellegrino, 380 F.3d 83, 93 (2d Cir. 2004). We reaffirmed our commitment to this analytical approach in Rushford, by observing that summary judgment is an adjudication that "serves as a substitute for trial," 846 F.2d at 252, and therefore, the First Amendment right of access attaches to documents and materials filed in connection with a summary judgment motion, see id. at 253.

The same logic dictates that the First Amendment right of access extends to a judicial opinion ruling on a summary judgment motion. The public has an interest in learning not only the evidence and records filed in connection with summary judgment proceedings but also the district court's decision ruling on a summary judgment motion and the grounds supporting its decision. Without access to judicial opinions, public oversight of the courts, including the processes and the outcomes they produce, would be impossible. See Cox Broad. Corp. v. Cohn, 420 U.S. 469, 492 (1975) ("[O]fficial records and documents open to the public are the basic data of governmental operations."); Mueller v. Raemisch, 740 F.3d 1128, 1135-36 (7th Cir. 2014) ("Secrecy makes it difficult for the public (including the bar) to understand the grounds and motivations of a decision, why the case was brought (and fought), and what exactly was at stake in it."); United States v. Mentzos, 462 F.3d 830, 843 n.4 (8th Cir. 2006) (denying motion to file

41

opinion under seal because "decisions of the court are a matter of public record"); Union Oil Co. of Cal. v. Leavell, 220 F.3d 562, 568 (7th Cir. 2000) ("[I]t should go without saying that the judge's opinions and orders belong in the public domain."); United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995) (observing that public monitoring of the courts "is not possible without access to . . . documents that are used in the performance of Article III functions"). Indeed, it would be anomalous to conclude that the First Amendment right of access applies to materials that formed the basis of the district court's decision ruling on a summary judgment motion but not the court's opinion itself. We therefore hold that the First Amendment right of access extends not only to the parties' summary judgment motions and accompanying materials but also to a judicial decision adjudicating a summary judgment motion.

2.

During the pendency of the underlying litigation, the district court allowed the entire docket sheet to remain sealed with the exception of Company Doe's motion to seal. Although the district court ultimately unsealed portions of the docket sheet, numerous entries remain hidden from public view.

This Court has, in the criminal context, reversed the sealing of docket sheets as overbroad and incompatible with the

42

First Amendment presumptive right of access.  See In re State-Record Co., 917 F.2d 124, 129 (4th Cir. 1990) (per curiam).  In doing so, we observed:

> There are probably many motions and responses thereto that contain no information prejudicial to defendant, and we can not understand how the docket entry sheet could be prejudicial.  However, under the terms of the orders entered in these cases, this information, harmless as it may be, has also been withheld from the public.

Id.  Our skepticism toward wholesale sealing of docket sheets was grounded in the commonsensical observation that most of the information contained on a docket sheet is material that is presumptively open to public inspection.  The Eleventh Circuit has squarely held that a district court's maintenance of a sealed docket sheet violates the public and press's First Amendment right of access to criminal proceedings, United States v. Valenti, 987 F.2d 708, 715 (11th Cir. 1993), and the Second Circuit has extended the First Amendment right of public access to docket sheets for civil proceedings, Hartford Courant Co., 380 F.3d at 96; see also United States v. Mendoza, 698 F.3d 1303, 1307 (10th Cir. 2012) (noting that "dockets are generally public documents" and collecting cases).  We join the Second Circuit and hold that the public and press's First Amendment qualified right of access to civil proceedings extends to docket sheets.

43

The ability of the public and press to inspect docket sheets is a critical component to providing meaningful access to civil proceedings. The docket sheet provides onlookers an overview of the court proceedings and allows them to ascertain the parties to the case, the materials that have been filed, and the trial judge's decisions. See United States v. Ochoa-Vasquez, 428 F.3d 1015, 1029 n.15 (11th Cir. 2005). Access to docket sheets therefore enhances the appearance of fairness and enlightens the public both to the procedures the district court utilized to adjudicate the claims before it and to the materials it relied upon in reaching its determinations. In this respect, "docket sheets provide a kind of index to judicial proceedings and documents, and endow the public and press with the capacity to exercise their rights guaranteed by the First Amendment." Hartford Courant Co., 380 F.3d at 93.

By sealing the entire docket sheet during the pendency of the litigation, as the district court permitted in this case, courts effectively shut out the public and the press from exercising their constitutional and common-law right of access to civil proceedings. But there is a more repugnant aspect to depriving the public and press access to docket sheets: no one can challenge closure of a document or proceeding that is itself a secret. Indeed, in this case Consumer Groups were able to challenge the sealing of only those categories of documents they

44

were able to glean from the district court's heavily redacted memorandum opinion. Because access to docket sheets is integral to providing meaningful access to civil proceedings, we hold that the public and press enjoy a presumptive right to inspect docket sheets in civil cases under the First Amendment.

B.

Having concluded that the public enjoys a qualified right of access under the First Amendment to the district court's memorandum opinion ruling on the parties' cross-motions for summary judgment, the materials the district court relied upon in adjudicating the summary judgment motions, and the docket sheet, we next must determine whether a compelling governmental interest negates the public's presumptive right of access to these documents. Because the First Amendment guarantees the right of access to these documents, our review of the district court's sealing decision is de novo. ACLU v. Holder, 673 F.3d 245, 251 (4th Cir. 2011).

The district court identified three interests that it found sufficiently compelling to defeat the First Amendment right of access: (1) Company Doe's interest in "preserving its reputational and fiscal health"; (2) Company Doe's interest in ensuring the efficacy of the injunctive relief awarded by the

45

district court; and (3) Company Doe's First Amendment right to petition the courts. We address each in turn.

1.

The district court surmised that disclosure of the materially inaccurate report of harm and any facts that would allow the public to link the report to Company Doe would risk injury to Company Doe's economic and reputational interests. The court then concluded that Company Doe's interest in "preserving its reputational and fiscal health" outweighed the public's First Amendment right of access.

A corporation very well may desire that the allegations lodged against it in the course of litigation be kept from public view to protect its corporate image, but the First Amendment right of access does not yield to such an interest. The interests that courts have found sufficiently compelling to justify closure under the First Amendment include a defendant's right to a fair trial before an impartial jury, Press-Enter., Co., 464 U.S. at 510; protecting the privacy rights of trial participants such as victims or witnesses, Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 607-08 (1982); and risks to national security, United States v. Aref, 533 F.3d 72, 83 (2d Cir. 2008); Detroit Free Press v. Ashcroft, 303 F.3d 681, 705 (6th Cir. 2002). Adjudicating claims that carry the potential

46

for embarrassing or injurious revelations about a corporation's image, by contrast, are part of the day-to-day operations of federal courts.  But whether in the context of products liability claims, securities litigation, employment matters, or consumer fraud cases, the public and press enjoy a presumptive right of access to civil proceedings and documents filed therein, notwithstanding the negative publicity those documents may shower upon a company.  A corporation may possess a strong interest in preserving the confidentiality of its proprietary and trade-secret information, which in turn may justify partial sealing of court records.  See Nixon, 435 U.S. at 598.  We are unaware, however, of any case in which a court has found a company's bare allegation of reputational harm to be a compelling interest sufficient to defeat the public's First Amendment right of access.  Conversely, every case we have located has reached the opposite result under the less demanding common-law standard.  See, e.g., Procter & Gamble Co. v. Bankers Trust Co., 78 F.3d 219, 225 (6th Cir. 1996) ("commercial self-interest" does not to qualify as a legitimate ground for keeping documents under seal); Republic of Philippines v. Westinghouse Elec. Corp., 949 F.2d 653, 663 (3d Cir. 1991) (harm to a "company's public image" alone cannot rebut the common-law presumption of access); Cent. Nat'l Bank of Mattoon v. U.S. Dep't of Treasury, 912 F.2d 897, 900 (7th Cir. 1990)

47

(information that "may impair [a corporation's] standing with its customers" insufficient to justify closure); Littlejohn, 851 F.2d at 685 (a corporation's "desire to preserve corporate reputation" is insufficient overcome common-law right of access); Wilson v. Am. Motors Corp., 759 F.2d 1568, 1570-71 (11th Cir. 1985) (per curiam) ("harm [to] the company's reputation" is insufficient to outweigh common-law right of access).

In any event, it is unclear from the district court's memorandum opinion what, if any, evidence the district court relied upon to conclude that dissemination of the report of harm would injure Company Doe's reputational and pecuniary interests. The district court made no specific findings explaining how the information sealed in this case would harm Company Doe's reputation, and Company Doe does not point us to any evidence that buttresses the district court's conclusion. After scouring the record on appeal, we find no credible evidence to support Company Doe's fear that disclosure of the challenged report of harm and the facts of this case would subject it to reputational or economic injury, particularly in light of the fact that the district court's entry of judgment in favor of Company Doe vindicated the company and its product. This Court has never permitted wholesale sealing of documents based upon unsubstantiated or speculative claims of harm, let alone harm to

48

a company's reputation.  Cf. Joy v. North, 692 F.2d 880, 894 (2d Cir. 1982) ("[A] naked conclusory statement that publication of the Report will injure the bank in the industry and local community falls woefully short of the kind of showing which raises even an arguable issue as to whether it may be kept under seal.").  An unsupported claim of reputational harm falls short of a compelling interest sufficient to overcome the strong First Amendment presumptive right of public access.  The district court erred by concluding otherwise.

2.

We also must reject the district court's conclusion that sealing was justified to safeguard the statutory right Company Doe sought to vindicate by bringing the underlying action.  The district court believed that blanket sealing of the summary judgment materials and sweeping redactions to its opinion were warranted so that Company Doe would not forfeit the statutory relief it obtained after successfully showing that the report of harm was materially inaccurate and should not, under the CPSIA, be published.

The relief Company Doe secured by prevailing on its claims was the right to keep the challenged report of harm removed from the online database.  That remedy is distinct from the right to litigate its claims in secret and to keep all meaningful facts

49

about the litigation forever concealed from public view. Neither the CPSIA nor the Administrative Procedure Act confers upon district courts carte blanche to conduct secret proceedings, and, more importantly, the Constitution forbids it.

The district court's sealing determination seems to be rooted in a concern that the public would be unable to appreciate the court's determination that the information contained in the challenged report of harm was materially inaccurate and failed to relate to Company Doe's product. The court's apprehension over the ramifications of disclosing the facts germane to this case cannot be squared with the principles of public discourse that underlie the First Amendment. As the Supreme Court long ago recognized, "erroneous statement is inevitable in free debate, and . . . it must be protected if the freedoms of expression are to . . . survive." N.Y. Times Co. v. Sullivan, 376 U.S. 254, 271-72 (1964).

We are not blind to the fact that a corporation's image or reputation may diminish by being embroiled in litigation against the government over the safety of one of its products. That is the nature of public litigation. When parties "call on the courts, they must accept the openness that goes with subsidized dispute resolution by public (and publicly accountable) officials." Union Oil Co. of Cal., 220 F.3d at 568. The district court therefore erred in concluding that sealing was

50

justified to protect the rights that Company Doe sought to vindicate by bringing its suit.

3.

For reasons substantially similar to those we have identified above, we cannot accept the district court's contention that allowing public access to a manufacturer's legal challenge to the inclusion of a report of harm in the Commission's database would impermissibly impinge upon the manufacturer's First Amendment right to petition the courts. Company Doe posits that, if pre-publication challenges to the Commission's online database could not be litigated without disclosing the very information the Commission seeks to publish, no manufacturer would challenge the inclusion of a report of harm in the database and risk more exposure to the challenged report through litigation.

Company Doe's argument contorts the First Amendment right to petition federal courts for redress of grievances and, if embraced, would allow any company that challenged the inclusion of a report in the Commission's database to litigate its claims behind closed doors. The First Amendment right to petition the government secures meaningful access to federal courts. See Bill Johnson's Rests., Inc. v. NLRB, 461 U.S. 731, 741 (1983). It does not provide for a right to petition the courts in

51

secret.  In this case, Company Doe was not denied meaningful access to the courts: it litigated its claims and obtained the relief it was entitled to under the Administrative Procedure Act.

## C.

The sealed documents in this case implicate public concerns that are at the core of the interests protected by the right of access: "the citizen's desire to keep a watchful eye on the workings of public agencies . . . [and] the operation of the government."  Nixon, 435 U.S. at 598.  The interest of the public and press in access to civil proceedings is at its apex when the government is a party to the litigation.  Indeed, the public has a strong interest in monitoring not only functions of the courts but also the positions that its elected officials and government agencies take in litigation.  See Fed. Trade Comm'n v. Standard Fin. Mgmt. Corp., 830 F.2d 404, 410 (1st Cir. 1987) ("The appropriateness of making court files accessible is accentuated in cases where the government is a party: in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch.").  In this case, the heightened public interest in disclosure is underscored by the fact that this legal action marked the first challenge to the

52

accuracy of material sought to be posted on the Commission's database.

The burden rested with Company Doe to articulate a compelling interest that outweighs the strong presumption of public access. Measured against the heightened public interests presented in this case, Company Doe has failed to demonstrate any interest sufficient to defeat the public's First Amendment right of access and to justify continued sealing. The district court's sealing order therefore must be reversed. Our determination to unseal the district court's memorandum opinion and the materials related to the parties' motions for summary judgment will bring to light the underlying facts, the information contained in the report of harm, and the evidence the district court relied upon in its adjudication of the claims. It follows that Company Doe would have no countervailing interest that would justify continuing to keep the remaining documents sealed. Accordingly, we instruct the district court to unseal the case in its entirety on remand.

D.

Before proceeding to Consumer Groups' challenge of the district court's pseudonymity ruling, we pause to address a final issue relating to the district court's sealing order. When presented with a motion to seal, the law in this Circuit

53

requires a judicial officer to comply with the following procedural requirements: (1) provide public notice of the sealing request and a reasonable opportunity for the public to voice objections to the motion; (2) consider less drastic alternatives to closure; and (3) if it determines that full access is not necessary, it must state its reasons—with specific findings—supporting closure and its rejections of less drastic alternatives. In re Knight Pub. Co., 743 F.2d at 234-35. Consumer Groups do not quarrel with the district court's adherence to the procedures mandated by In re Knight Publishing Co. However, Consumer Groups and their supporting amici complain that the district court erred by failing to rule on the sealing motion for nine months, thereby allowing the case to remain under temporary seal pursuant to the district court's local rules.

The public's interest in monitoring the work of the courts is subverted when a court delays making a determination on a sealing request while allowing litigation to proceed to judgment in secret. Indeed, this Court has rejected pleas by litigants that the public right of access can be accommodated "by releasing the information after [the] trial has concluded, when all danger of prejudice will be past," reasoning that "the value of openness . . . is threatened whenever immediate access to ongoing proceedings is denied, whatever provision is made for

later public disclosure." In re Application & Affidavit for a Search Warrant, 923 F.2d 324, 331 (4th Cir. 1991) (quoting In re Charlotte Observer, 882 F.2d 850, 856 (4th Cir. 1989)) (internal quotation marks omitted). Because the public benefits attendant with open proceedings are compromised by delayed disclosure of documents, we take this opportunity to underscore the caution of our precedent and emphasize that the public and press generally have a contemporaneous right of access to court documents and proceedings when the right applies. "Each passing day may constitute a separate and cognizable infringement of the First Amendment." Grove Fresh Distribs., Inc. v. Everfresh Juice Co., 24 F.3d 893, 897 (7th Cir. 1994) (brackets omitted) (quoting Neb. Press Ass'n v. Stuart, 423 U.S. 1327, 1329 (Blackmun, Circuit Justice, 1975)). A district court therefore must make on-the-record findings required by In re Knight Publishing and act on a sealing request as expeditiously as possible.

Because the district court allowed Company Doe's motion to seal to remain pending for nine months while it adjudicated the merits of Company Doe's claims, neither the public nor the press was able to monitor the progress of the litigation as it unfolded. The district court's nine-month delay in ruling on the sealing motion ostensibly was based upon its belief that the merits of Company Doe's claims were "inextricably intertwined" with the issues of sealing. But the public right of access

55

under the First Amendment and common law is not conditioned upon whether a litigant wins or loses. The district court erred by failing to act expeditiously on the sealing motion.

IV.

Last, Consumer Groups challenge the district court's decision permitting Company Doe to litigate under a pseudonym. We review a district court's pseudonymity decision under an abuse-of-discretion standard. James v. Jacobson, 6 F.3d 233, 239 (4th Cir. 1993).

The Federal Rules of Civil Procedure require that the identities of the parties to a case be disclosed. See Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties . . . ."). This Court has recognized that in exceptional circumstances, compelling concerns relating to personal privacy or confidentiality may warrant some degree of anonymity in judicial proceedings, including use of a pseudonym. See Jacobson, 6 F.3d at 238. In Jacobson, we identified the following nonexclusive factors for district courts to consider when determining whether a party should be permitted to litigate pseudonymously:

> Whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; whether identification poses a risk of

56

retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; the ages of the person whose privacy interests are sought to be protected; whether the action is against a governmental or private party; and, relatedly, the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

Id. We emphasized, however, that proceeding by pseudonym is a "rare dispensation." Id.

The district court's pseudonymity determination rested upon two of the Jacobson factors: (1) the prejudice that precluding Company Doe from proceeding pseudonymously likely would produce and (2) the risk of unfairness to the Commission in allowing the action to proceed anonymously. It found that both factors weighed in favor of allowing Company Doe to litigate its claims under a pseudonym, explaining that Company Doe initiated the underlying suit to prevent disclosure of its identity; disclosing Company Doe's identity would cause harm to the company; and the Commission would not be prejudiced by allowing Company Doe to litigate its claims pseudonymously.

Pseudonymous litigation undermines the public's right of access to judicial proceedings. The public has an interest in knowing the names of the litigants, see Coe v. Cnty. of Cook, 162 F.3d 491, 498 (7th Cir. 1998), and disclosing the parties' identities furthers openness of judicial proceedings, see Jacobson, 6 F.3d at 238. It is unsurprising, then, that many of

57

our sister circuits have adopted an approach for pseudonymity requests that balances a litigant's stated need for anonymity against the public's countervailing interests in full disclosure and openness. See, e.g., Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 189 (2d Cir. 2008) (holding that "the plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant"); Doe v. Porter, 370 F.3d 558, 560 (6th Cir. 2004) (framing pseudonym issue by asking "whether a plaintiff's privacy interests substantially outweigh the presumption of open judicial proceedings"); Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 685 (11th Cir. 2001) (explaining that the "ultimate test for permitting a plaintiff to proceed anonymously is whether the plaintiff has a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings"); Does I Thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1068 (9th Cir. 2000) (holding that "a party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity"); M.M. v. Zavaras, 139 F.3d 798, 803 (10th Cir. 1998) (adopting a test that "weigh[s] the plaintiff's claimed right to privacy against the countervailing public interest in [open

58

proceedings]"). We agree that the public's interest in open proceedings must inform a district court's pseudonymity calculus. We therefore hold that, when a party seeks to litigate under a pseudonym, a district court has an independent obligation to ensure that extraordinary circumstances support such a request by balancing the party's stated interest in anonymity against the public's interest in openness and any prejudice that anonymity would pose to the opposing party.

With due respect for the discretion we afford to the district court's ability to balance the relevant Jacobson factors in weighing the competing interests at stake, we conclude that the court abused its discretion in permitting Company Doe to litigate under a pseudonym. In allowing Company Doe to proceed anonymously, the district court gave no explicit consideration to the public's interest in open judicial proceedings. As we have explained, the public interest in the underlying litigation is especially compelling given that Company Doe sued a federal agency. See Doe v. Megless, 654 F.3d 404, 411 (3d Cir. 2011) (explaining that public's interest in disclosure of plaintiff's identity was "heightened" because defendants were "public officials and government bodies" (citation omitted) (internal quotation marks omitted)); Femedeer v. Haun, 227 F.3d 1244, 1246 (10th Cir. 2000) (noting that "the public has an important interest in access to legal proceedings,

59

particularly those attacking . . . properly enacted legislation"). Further, unlike cases in which courts granted pseudonymity to protect "privacy or confidentiality concerns," Jacobson, 6 F.3d at 238, courts consistently have rejected anonymity requests to prevent speculative and unsubstantiated claims of harm to a company's reputational or economic interests, see, e.g., Nat'l Commodity & Barter Ass'n v. Gibbs, 886 F.2d 1240, 1245 (10th Cir. 1989) (per curiam) (explaining that pseudonymity "has not been permitted when only the plaintiff's economic or professional concerns are involved" and collecting cases). Although the use of a fictitious name has been permitted in cases involving the disclosure of confidential information, Company Doe has made no showing that such interests were implicated in this case. Instead, Company Doe commenced this action to challenge the Commission's decision to publish a report pertaining to one of Company Doe's products in the Commission's online database. We have explained that use of a pseudonym "merely to avoid the annoyance and criticism that may attend . . . litigation" is impermissible. Jacobson, 6 F.3d at 238. Because Company Doe has failed to identify any exceptional circumstances that justify the use of a pseudonym in these proceedings, we hold that the district court abused its discretion in allowing Company Doe to litigate pseudonymously.

V.

To recapitulate, we hold that Consumer Groups' notice of appeal deprived the district court of jurisdiction to entertain Consumer Groups' motion to intervene. Accordingly, we vacate the district court's order denying intervention on the merits. We further conclude that Consumer Groups meet the requirements for nonparty appellate standing and have Article III standing to seek appellate review of the district court's sealing and pseudonymity orders. Thus, we deny Company Doe's motion to dismiss Consumer Groups' appeal. Finally, we hold that the district court's sealing order violated the public's right of access under the First Amendment and that the court abused its discretion in allowing Company Doe to proceed under a pseudonym. We therefore reverse the district court's sealing and pseudonymity orders and remand the case with instructions for the district court to unseal the record in its entirety.

<u>VACATED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS</u>

HAMILTON, Senior Circuit Judge, concurring in the judgment:

To seal the court record below, as the district court did, the relevant First Amendment jurisprudence required Company Doe to establish, at a minimum, that a compelling governmental interest would be furthered by granting the motion to seal. Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 178, 180 (4th Cir. 1988). Regrettably, Company Doe simply failed to meet this burden, and, for this reason, I am constrained, with reservations, to concur in the judgment. I also vote to deny Company Doe's motion to dismiss this appeal.

The able and conscientious district judge in this case faced a difficult task: deciding whether Company Doe's interest in sealing the bulk of the court record overcame the First Amendment interests of the Consumer Product Safety Commission (the Commission), its then chairwoman Inez Tenenbaum in her official capacity (Chairwoman Tenenbaum), and three consumer advocacy groups--Public Citizen, Consumer Federation of America, and Consumers' Union (collectively the Consumer Groups). The district court believed that sealing the bulk of the record in this case from public consumption preserved, in large measure, the efficacy of the injunctive relief the district court granted Company Doe on the merits of its action against the Commission and Chairwoman Tenenbaum. The district court also understood Company Doe's interest in preserving its sound reputation and

62

fiscal health as well as its interest in availing itself of its First Amendment right to petition the courts for redress.

The district court's reasoning founders for the simple reason that it misunderstood the quantum of evidence necessary to trump the First Amendment rights of, for example, the Consumer Groups. Had Company Doe supported its motion to seal with expert testimony establishing a high likelihood that denying its motion to seal would cause it to suffer substantial and irreparable economic harm, the disposition of the present appeal, in my view, would be completely different.

To be sure, the equities here lie with Company Doe. Common sense tells us that some harm will befall Company Doe by the publication of the false and misleading reports at issue in this case. In the electronically viral world that we live in today, one can easily imagine how such publications could be catastrophic to Company Doe's fiscal health, allowing it never to recover. In such a world, to say that the free flow of ideas will save Company Doe is naive--the game often will be over before it begins. Understandably, the district court was very concerned about the impact these publications would have on Company Doe, both from an economic and overall survival standpoint. However, the First Amendment jurisprudence requires more than a common sense feeling about what harm may befall Company Doe. It requires concrete proof of a high likelihood of

substantial and irreparable economic harm.  Because Company Doe failed to present such concrete proof to the district court, we are left only with a common sense feeling of what may occur, which simply is not enough to support the sealing of a record. Without a doubt, the district court's heart was in the right place, and it is regrettable that the majority opinion acknowledges neither the difficult task confronted by the district court, nor the care and genuine concern displayed by such court in ruling on the motion to seal.