**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 13-4360**

───────────

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

JOHN ADAMS, a/k/a L.J., a/k/a Little Johnny,

Defendant – Appellant.

───────────

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  Richard D. Bennett, District Judge.
(1:11-cr-00547-RDB-11)

───────────

Argued: January 29, 2015                  Decided: June 1, 2015

───────────

Before KING and AGEE, Circuit Judges, and DAVIS, Senior Circuit
Judge.

───────────

Vacated and remanded by published opinion, which is filed under
seal by published order.  Judge King wrote the opinion, in which
Judge Agee joined except as to footnote 10 and Senior Judge
Davis joined in full.  Judge Agee and Senior Judge Davis wrote
concurring opinions.  Judge King directed entry of the sealing
order with the concurrence of Judge Agee and Senior Judge Davis.

───────────

**ARGUED:** Amy Lee Copeland, ROUSE & COPELAND, LLC, Savannah,
Georgia, for Appellant.  Christopher John Romano, OFFICE OF THE
UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.  **ON
BRIEF:** Rod J. Rosenstein, United States Attorney, OFFICE OF THE
UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

───────────

---
**SEALING ORDER**
---

KING, Circuit Judge:

The Court's opinion in this matter is filed under seal due to the sensitive nature of its contents. Premised on the conclusion that the district court committed plain error, the Court's opinion vacates and remands for further proceedings. Judge Agee joined in the Court's opinion except as to footnote 10, which reads:

> We are somewhat surprised that the government failed to confess plain error on appeal and thereby enhance the integrity of judicial proceedings. We are again reminded of the Supreme Court's decision in Berger v. United States, where the United States Attorney was properly described as representing a sovereign "whose obligation . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done." See 295 U.S. 78, 88 (1935). As Justice Sutherland further explained, the public must have "confidence that these obligations . . . will be faithfully observed," and that prosecutors will strive to ensure fairness and justice. Id.

Senior Judge Davis joined in the Court's opinion in full.

The concurring opinions of Judge Agee and Senior Judge Davis each discuss footnote 10. Those concurring opinions are attached to this order, although Judge Agee's concurring opinion is partially redacted for the same reason that the Court's opinion is hereby sealed.

2

Nearly all the record of this matter — including most of the proceedings conducted in the district court, a portion of the public docket, substantial aspects of the appellate briefs, and the oral argument of this appeal — has been and remains sealed. As specified in footnote 11 of the Court's opinion, the district court should, on remand, "consider alternatives [to] sealing the [entirety of the] record" and carefully "weigh the competing interests at stake." Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 178, 181-82 (4th Cir. 1998); see also Va. Dep't of State Police v. Wash. Post, 386 F.3d 567, 576 (4th Cir. 2004). Public access to judicial proceedings is consistent with the "First Amendment and the common-law tradition that court proceedings are presumptively open to public scrutiny." Doe v. Pub. Citizen, 749 F.3d 246, 265 (4th Cir. 2014); see also In re The Wall St. Journal, No. 15-1179, 2015 WL 925475, at *1 (4th Cir. Mar. 5, 2015) (explaining that the public "enjoys a qualified right of access to criminal trials, pretrial proceedings, and documents submitted in the course of a trial" (internal quotation marks omitted)). Accordingly, the parties — particularly the government — should notify the district court and this Court if sealing of the record (in whole or in part) is no longer necessary.

For the Court

/s/ Patricia S. Connor, Clerk

3

AGEE, Circuit Judge, concurring:

████████████████████████████████████████████████

████████████████████████████████████  I write separately, however, to state my disagreement with footnote ten of the majority opinion, which suggests that the Government should not have pursued this appeal at all.

The Government possesses "broad" prosecutorial discretion. Wayte v. United States, 470 U.S. 598, 608 (1985), and it exercises that discretion when choosing when or how to pursue an appeal, United States v. Fernandez, 887 F.2d 465, 470 (4th Cir. 1980). Sometimes the Government may press an argument on appeal that, from our position, seems less convincing. But we should expect some aggressiveness, as the Government is obliged to "prosecute the accused with earnestness and vigor." United States v. Agurs, 427 U.S. 97, 110 (1976). Thus, "[i]t should be a rare occasion when judges criticize, and thereby intrude into, a legitimate exercise of prosecutorial discretion." United States v. Bonner, 363 F.3d 213, 219 (3d Cir. 2004) (Smith, J., concurring). After all, "prosecutorial decisions . . . are "particularly ill-suited for judicial review." United States v. Richardson, 856 F.2d 644, 647 (4th Cir. 1988) (internal quotation marks omitted). If we too eagerly and too often comment on the Government's strategic choices, then the

4

Government could become a less zealous advocate -- and our adversarial system of justice would suffer for it.

This case does not present one of those rare occasions when we should disparage a coordinate branch for doing what the Constitution and its statutory mandate charge it to do.  The Government here faced a claim of unobjected-to ███████ error.  Certainly, it is "difficult" for the ordinary defendant to establish plain error.  Puckett v. United States, 556 U.S. 129, 135 (2009).  And some of our prior decisions suggested that reversal in circumstances like these was especially unlikely.

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████       ████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
█████████████████████████████████

Of course, we have ultimately rebuffed the Government's position. But the vacatur alone should be enough of a rebuke. Thus, I join the majority except as to footnote ten, preferring to leave that portion of the opinion unsaid.

DAVIS, Senior Circuit Judge, concurring:

I am pleased to join in full Judge King's excellent opinion for the panel.

A brief word is in order, however, in response to our good friend's concurring opinion, in which exception is taken to the unexceptional observations set forth in footnote 10 of the majority opinion. Our friend seems to think we are somehow being too harsh on the government, and perhaps operating outside the bounds of our adjudicative responsibilities, as well, in making the comments in that footnote, writing, in part:

> Thus, "[i]t should be a rare occasion when judges criticize, and thereby intrude into, a legitimate exercise of prosecutorial discretion." United States v. Bonner, 363 F.3d 213, 219 (3d Cir. 2004) (Smith, J., concurring).

Ante at 4.

Lest the reader misapprehend the true import of the brief comment taken from Judge Smith's concurring opinion in the Third Circuit's Bonner case, however, an elaboration is crucial. In Bonner, upon a government appeal, the court reversed the district court's grant of the defendant's motion to suppress evidence, finding that the district court erred in concluding that local police officers lacked reasonable articulable suspicion to chase on foot and tackle a motorist who fled from a legitimate traffic stop. 363 F.3d at 215, 218. A similar motion had been granted by a state court judge, after which (during the

7

pendency of the Commonwealth's appeal) a federal prosecution was commenced based on the same underlying conduct.

Although Judge Smith concurred in the reversal of the suppression order, he also specifically and explicitly approved a portion of Judge McKee's full-throated dissent, in which Judge McKee strongly criticized state and federal prosecutors for decisions our friend apparently would view as mere "strategic choices" that should lie beyond the reach of a legitimate, thoughtful critique by the members of the Third Branch.[*]

---

[*] Judge Smith wrote:

Finally, although I join Judge Cowen in reversing the District Court, I echo the sentiments of Judge McKee expressed in Part III of his dissent.

It should be a rare occasion when judges criticize, and thereby intrude into, a legitimate exercise of prosecutorial discretion. Nor should we routinely question in our opinions the policy decisions of Congress to federalize what has traditionally been state law street crime. Our institutional role as judges is limited by our jurisdiction and by the comity and respect we owe to coordinate branches of government.

That being said, the instant case presents a series of events which the dissent characterizes as a prosecutorial "switcheroo." I cannot disagree with that characterization, and I share the "concern for the appearance of fairness" expressed by Judge McKee. It is one thing for the government to assume an investigation initiated by state law enforcement officials, or even to adopt a prosecution commenced by state prosecutors. It is quite another to seek a federal indictment where the federal interest in the case is recognized only after state prosecutors have

(Continued)

8

Unlike judges, such as our concurring friend, who apparently believe it is <u>never</u> appropriate for those of us in the Judicial Branch to express reservations or disapproval of manifestly irregular, if not illegal, "strategic choices" by prosecutors, I believe judges need to say more, not less, to the political branches about the serious deficits in our criminal justice system. Judges McKee and Smith plainly agree:

> Although we have jurisdiction here and must exercise it, this procedural history does not reflect well on the criminal justice system and undermines the appearance of fairness so important to its proper functioning. "[T]o perform its high function in the best way[,] 'justice must satisfy the appearance of justice.' " <u>In re Murchison</u>, 349 U.S. 133, 136 (1955) (quoting <u>Offutt v. United States</u>, 348 U.S. 11, 14 (1954)). In the future, I would hope that concern for the appearance of fairness will constrain prosecutors from engaging in the kind of unexplained tactical manipulation that appears so evident here.

<u>Bonner</u>, 363 F.3d at 230 (McKee, J., dissenting). And thankfully, they are not alone. <u>See</u>, <u>e.g.</u>, <u>United States v. Ingram</u>, 721 F.3d 35, 43 n. 9 (2d Cir. 2013) (Calabresi, J. concurring) ("[W]e judges have a right— a duty even— to express criticism of

---

given the case their best shot in the state courts and lost on an issue of state law. <u>Not only does such a tactic offend fundamental notions of fairness, it is contrary to traditional notions of our federalism.</u>

<u>United States v. Bonner</u>, 363 F.3d 213, 219-20 (3d Cir. 2004) (Smith, J., concurring)(emphasis added).

9

legislative judgments that require us to uphold results we think are wrong." (footnotes and citations omitted)).

Indeed, who is better positioned to dialogue with the legislative and executive branches about the criminal justice system generally, and about "fundamental notions of fairness," Bonner, 363 F.3d at 220 (Smith, J., concurring), and "concern for the appearance of fairness," id. at 230 (McKee, J., dissenting), specifically, than judges? And where is it more appropriate to carry on that dialogue than in the opinions we issue resolving actual cases?

Contemporary discord in this country we all love, especially in stressed communities where interaction with the criminal justice system is a regular and dispiriting occurrence for many residents, might well be reduced if we judges better used our voices to inform and educate the political branches about how the decisions they make actually operate down here on the ground floor of the criminal justice system. In an era of mass incarceration such as ours, any fear that restrained judicial commentary on dicey prosecutorial practices or "strategic choices" might result in "the Government [] becom[ing] a less zealous advocate," ante at 24-25, is most charitably described as fanciful.

In sum, when judges "see something" judges should "say something."