**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-4482

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RICHARD LEROY ABNEY,

Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore. George L. Russell, III, District Judge. (1:14-cr-00102-GLR-1)

Argued: September 28, 2018                    Decided: January 23, 2019

Before KING, DUNCAN, and FLOYD, Circuit Judges.

Affirmed by unpublished per curiam opinion. Judge King wrote a separate concurring opinion.

**ARGUED:** Marta K. Kahn, THE LAW OFFICE OF MARTA K. KAHN, LLC, Baltimore, Maryland, for Appellant. Jeffrey J. Izant, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Stephen M. Schenning, Acting United States Attorney, Paul E. Budlow, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellant Richard Abney was indicted for armed bank robbery in 2014. Defense counsel requested an evaluation and hearing on Abney's competency to stand trial. Following years of evaluations by various doctors, Abney was deemed incompetent to stand trial unless he took medication. Because Abney was unwilling to take medication for his condition, the government moved to place him on medication without his consent. Following a hearing, the district court concluded that involuntarily medicating Abney would not violate the Constitution; therefore, the district court issued an order granting the government's motion. Abney now appeals that order, and we affirm.

I.

On January 4, 2014, Abney allegedly committed armed bank robbery in Columbia, Maryland.[*] A grand jury returned an indictment charging Abney with conspiracy to commit armed bank robbery, armed robbery, and discharging a firearm during a crime of violence. Abney was then placed in the Chesapeake Detention Facility (CDF) in Baltimore, Maryland.

Over the next several years, Abney underwent a series of psychological evaluations to determine his competency to stand trial. In March 2014, defense counsel filed a motion pursuant to 18 U.S.C. § 4241(a) requesting what would be the first in this

---

[*] The majority of the record in this case has been sealed at Abney's request, and the majority of the parties' briefing has been redacted. Consequently, our recounting of the facts is severely constrained.

series of evaluations. Abney was transferred to the Federal Medical Center in Devens, Massachusetts (FMC Devens) where he was evaluated in May and June of 2014 by Chad Tillbrook. Dr. Tillbrook concluded that Abney was not suffering from a mental illness that would compromise his understanding of the trial process and deemed him competent to stand trial.

In the fall of 2014, Abney's defense counsel retained forensic psychologist Michael J. O'Connell to evaluate Abney's competency. In March 2015, Dr. O'Connell concluded that Abney's mental condition prevented him from understanding legal proceedings and Abney was therefore not competent to stand trial.

In May 2015, the district court conducted a competency hearing and concluded that Abney was not competent to stand trial. The court committed Abney to the custody of the Attorney General for hospitalization and treatment, and he was transferred to the Federal Medical Center in Butner, North Carolina (FMC Butner). At FMC Butner, Abney was treated by forensic psychologist Carlton Pyant. Dr. Pyant concluded that Abney was competent to stand trial.

Abney was then transferred back to CDF, where Dr. O'Connell, the defense's forensic psychologist, evaluated him again in April 2016. Dr. O'Connell again concluded that Abney was not competent to stand trial.

Given the conflicting conclusions regarding Abney's mental state, the government moved for a § 4241(c) hearing to determine Abney's competency. The government requested that it be allowed to conduct an updated psychological examination to prepare for this hearing. The court granted this motion and transferred Abney to FMC Devens

3

where he was evaluated again by Dr. Tillbrook. This time, unlike in his 2014 evaluation of Abney, Dr. Tillbrook concluded that Abney was not competent to stand trial and recommended that he be committed for further evaluation to determine if his competency could be restored.

Considering Dr. Tillbrook's conclusion, the parties agreed that a second § 4241(c) hearing was unnecessary. They filed a joint motion to have Abney further committed to determine whether there was a substantial probability that his competency could be restored in the foreseeable future. The court granted the motion and ordered that a report on the question be made by an examining doctor. On December 27, 2016, Dr. Tillbrook issued a report concluding that Abney remained incompetent, but that there was a substantial probability that his competency could be restored by treatment with antipsychotic medication. Because Abney had refused to accept medication voluntarily, Dr. Tillbrook recommended that the medication be administered involuntarily pursuant to *Sell v. United States*, 539 U.S. 166 (2003).

On June 13 and 15, 2017, the court conducted a *Sell* hearing. Dr. Tillbrook testified as an expert on both Abney's competency to stand trial and the efficacy of involuntary medication to restore competency. Although the defense had retained its own expert to review and rebut Dr. Tillbrook's report, it did not call that expert as a witness. On July 18, 2017, the district court granted the government's motion. This appeal followed.

II.

4

We are asked to decide whether the involuntary medication of a defendant is constitutional in this case under the test set forth by the Supreme Court in *Sell v. United States*, 539 U.S. 166 (2003). This appeal focuses on one element of that test: whether the government proved that involuntary medication is substantially likely to render Abney competent and substantially unlikely to cause side effects that would, themselves, undermine the fairness of the trial. We hold that the district court did not clearly err in finding that the government had met its burden for this element of the *Sell* test, and we therefore affirm the district court's order.

## A.

The Supreme Court held in *Sell* that given the important governmental interest of bringing a person accused of a serious crime to trial, it is constitutionally permissible in some circumstances to involuntarily administer medication to render a defendant competent to stand trial. 539 U.S. at 179. The government may administer treatment involuntarily only if it "is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests." *Id.* The Court articulated a four-part test that the government must satisfy to show that involuntary medication is warranted: 1) "a court must find that *important* governmental interests are at stake;" 2) "the court must conclude that involuntary medication will *significantly further* those concomitant state interests;" 3) "the court must conclude that involuntary medication is *necessary* to further those interests," and 4) "the

5

court must conclude that administration of the drugs is *medically appropriate*." *Id.* at 180–81 (emphasis in original). The government must prove each of these elements by clear and convincing evidence. *United States v. Bush*, 585 F.3d 806, 814 (4th Cir. 2009).

Abney challenges only the second element of the *Sell* test, which considers whether involuntary medication will significantly further state interests. To satisfy this element, the government must show both that the "administration of the drugs is substantially likely to render the defendant competent to stand trial" and that the "administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair." *Sell*, 539 U.S. at 181. "[T]he government must make this showing with respect to the particular defendant it seeks to medicate involuntarily." *Bush*, 585 F.3d at 815–16. In other words, the test is "not whether a proposed treatment plan is likely to work in general, but whether it is likely to work as applied to a particular defendant." *United States v. Watson*, 793 F.3d 416, 425 (4th Cir. 2015).

The second element of the *Sell* test presents a factual question, which we review for clear error. *United States v. White*, 620 F.3d 401, 410 (4th Cir. 2010). "We reverse a factual finding as being clearly erroneous if, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 379 (4th Cir. 1995) (internal citation and quotation marks omitted).

6

B.

We note that our discussion and evaluation of the district court's decision is frustrated by the fact that at Abney's request, the majority of the record in this case, including the district court's order and the expert report on which the court relied, has been sealed. Our analysis is by necessity somewhat conclusory.

We have reviewed the record under seal. Based on our review, we are satisfied that the district court did not clearly err in finding that involuntary administration of medication would significantly further state interests. Through Dr. Tillbrook's expert report and testimony, the government met its burden of proving with sufficient particularity that involuntary medication is substantially likely to render Abney competent to stand trial and substantially unlikely to induce side effects that would undermine a fair trial.

Dr. Tillbrook's report cited studies showing that medications like those recommended for Abney have been effective when involuntarily administered to inmates with his condition. The report also considered Abney's individual characteristics and medical history in gauging the effectiveness of the proposed treatment. The report described in detail the typical side effects associated with the proposed medication, the likelihood of such effects, and plans to monitor and manage such effects in Abney. In response to Dr. Tillbrook's report, Abney presented no evidence or expert testimony suggesting that the proposed course of treatment would be ineffective. In sum, Dr. Tillbrook's report was supported by research particular to Abney's symptoms and disease. Reviewing the record under the deferential clear-error standard, we are not "left

with a definite and firm conviction that a mistake has been committed." *Jiminez*, 57 F.3d at 379.

## III.

For the foregoing reasons, we affirm the district court's order granting the government's motion for involuntary medication.

*AFFIRMED*

KING, Circuit Judge, concurring:

I am pleased to concur in the per curiam opinion of the panel. I write separately, however, to briefly discuss the lack of transparency in some court proceedings. As the opinion correctly observes, a majority of this record is sealed. *See ante* 2 n.1. In addition to constraining our ability to recite pertinent facts, extensive sealing — at times without full compliance with the applicable rules and absent sufficient explanations — can undermine a foundational principle of our judicial system. Put succinctly, court proceedings are "presumptively open to public scrutiny." *See United States v. Adams*, 788 F.3d 115, 116 (4th Cir. 2015) (quoting *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014)). This Court, on several occasions, has emphasized this settled tenet, and we have urged that the sealing of court records be regularly reexamined and that alternatives to sealing be considered. *See id.* at 115-16 (recommending that court consider on remand alternatives to sealing); *see also United States v. Caluori*, 712 F. App'x 278, 280 n.* (4th Cir. 2018) (proposing that court contemplate unsealing portions of record). As in those examples, a careful reexamination of the sealed portions of the record in this case is entirely appropriate.