**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-1058**

---

JOHN DOE,

> Plaintiff – Appellant,

v.

JANE DOE,

> Defendant – Appellee.

------------------------------

FIRST AMENDMENT COALITION; PROFESSOR EUGENE VOLOKH,

> Amici Supporting Appellee.

---

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Dever III, District Judge. (5:22-cv-00500-D-BM)

---

Argued:  September 19, 2023                    Decided:  October 26, 2023

---

Before AGEE, WYNN, and THACKER, Circuit Judges.

---

Affirmed by published opinion.  Judge Thacker wrote the opinion in which Judge Agee and Judge Wynn joined.

---

**ARGUED:**  Kara L. Gorycki, NESENOFF & MILTENBERG, LLP, New York, New York, for Appellant.  Kelly Margolis Dagger, ELLIS & WINTERS LLP, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  Andrew T. Miltenberg, NESENOFF & MILTENBERG, LLP, New York, New York, for Appellant.  James M. Weiss, ELLIS & WINTERS LLP, Raleigh,

North Carolina, for Appellee.  Eugene Volokh, First Amendment Amicus Brief Clinic, UCLA SCHOOL OF LAW, Los Angeles, California, for Amici Curiae.

_____

THACKER, Circuit Judge:

John Doe ("Appellant") filed this civil action alleging claims for defamation, abuse of process, tortious interference with contract, intentional infliction of emotional distress, and civil conspiracy against Jane Doe ("Appellee") after Appellee accused Appellant of sexual assault. When Appellant filed his complaint, he also filed an ex parte motion to proceed using the pseudonym "John Doe," rather than his real name. The district court denied the motion. Because we conclude that the district court did not abuse its discretion in doing so, we affirm.

I.

Appellant began his undergraduate studies at Tulane University in August 2018 and was on track to graduate in May 2022 prior to the events giving rise to this lawsuit.[1] Appellant had an ongoing but not steady, "uncommitted, casual relationship" with a woman he calls "Sue Roe" in Fall 2019, and at various points in Spring and Summer 2021. J.A. 8.[2] In August 2021, Appellant and Sue Roe left a bar together, went to Sue Roe's house, and engaged in what Appellant alleges was consensual sex. Afterward, Appellant told Sue Roe that they "may regret that later," which made her cry. *Id.* at 9. After apologizing, Appellant went to sleep but was awakened at some point later by Sue Roe's housemate, who asked him to leave.

---

[1] We recount the facts here as Appellant alleged them in his Complaint.

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

3

In September 2021, Appellant "matched" on Tinder with Appellee. Several months later, Appellant invited Appellee to his fraternity party, which they attended on January 29, 2022. Appellee then texted Appellant on February 2, 2022, to wish him a happy birthday. Around midnight that night, Appellant asked Appellee if she "wanted to hang out," to which she responded that she did. J.A. 13. The two went to Appellant's house to have consensual sex, and Appellant walked Appellee home the next morning. On the night of February 3, Appellant went to a bar with his friends and met up with a woman he identifies as "A.H." *Id.* Appellant and A.H. left the bar together and "[u]pon information and belief, [Appellee] saw [Appellant] talking to A.H. at the bar and heard that he and A.H. went home together." *Id.* at 14.

Appellant alleges that after Appellee learned he went home with another woman on February 3, Appellee set off on a campaign to disseminate false allegations against him. Appellant alleges that on February 4, Appellee told one of Appellant's friends that Appellant had "engaged in nonconsensual sexual activity" with her. J.A. 14. "[B]y February 6th, false rumors had begun spreading around school alleging that [Appellant] sexually assaulted a female student" and Appellant had been told about the rumors and social media posts[3] by several people. *Id.* at 14–15. On the evening of February 8, Appellant received a text message from Appellee accusing him of sexually assaulting her and calling him "a predator and repeat offender." *Id.* at 15.

---

[3] Appellant does not allege that any post actually identified him but says there was "an indication" in one post that it was referring to him. J.A. 14.

The following day, Appellant discussed the allegedly false claims with multiple friends, and two of his friends called Appellant's "parents to tell them it was not safe for [Appellant] to be on the Tulane campus." J.A. 15. On February 10, Appellant's mother flew to Tulane to help Appellant pack and take him home. Appellant withdrew from Tulane on February 11, 2022.

Although Appellant was unaware at the time, Appellee had filed a report against Appellant with Tulane's Case Management and Victim Support Services[4] office on February 6, 2022. And on February 11, the day Appellant withdrew from Tulane, both Appellee and Sue Roe filed formal Title IX/Sexual Misconduct reports against Appellant. "Both reported having consensual sex with [Appellant], falling asleep, and waking up to him engaging in sexual activity." J.A. 18. Tulane investigated the reports and interviewed both Appellee and Sue Roe. Appellant alleges that Appellee's statement to Tulane investigators was false, defamatory, and contradicted by other evidence, and that Appellee conspired with Sue Roe and submitted false evidence in the course of the investigation. Tulane found Appellant responsible for sexual misconduct and expelled him from the university on May 8, 2022.

---

[4] The Case Management and Victim Support Services office offers support to Tulane students on a range of academic and non-academic issues, including medical needs, drug or alcohol abuse, and behavioral health concerns. The office also provides support to Tulane students who have been victims of crimes such as sexual assault, intimate partner violence, stalking, and hazing. Tulane University, *Case Management and Victim Support Services*, https://cmvss.tulane.edu/; https://perma.cc/KB2D-GGRJ (last visited Oct. 25, 2023).

On December 8, 2022, Appellant filed this civil action against Appellee[5] in the United States District Court for the Eastern District of North Carolina. In the Complaint, Appellant alleges claims for defamation, abuse of process, tortious interference with contract, intentional infliction of emotional distress, and civil conspiracy. Appellant seeks relief in the form of a "declaration that [Appellee] defamed [Appellant]" as well as compensatory and punitive damages on each claim. J.A. 40–41.

On the same day he filed his Complaint, Appellant filed an ex parte motion for leave to proceed using a pseudonym along with a supporting memorandum. In his motion, Appellant asked only "for leave to proceed under pseudonym," S.J.A. 1,[6] and his supporting memorandum reacknowledged that he sought "an Order granting permission to file a Complaint in the above-captioned matter as a pseudonymous Plaintiff." J.A. 43. Therefore, while Appellant's supporting memorandum noted that Jane Doe and Sue Roe were pseudonyms and that "all students shall be identified herein by pseudonym as well," *id.*, the district court construed the motion *only* as one to allow Appellant to use a pseudonym for himself -- not as a motion for leave to use pseudonyms for Jane Doe, Sue Roe, or anyone else. After considering the applicable factors as set out by this court, the district court denied Appellant's motion.

Appellant timely noted this appeal.

---

[5] The Complaint identifies Appellee only as "Jane Doe" and does not reveal her legal name or other identifying characteristics.

[6] Citations to the "S.J.A." refer to the Supplemental Joint Appendix filed by the parties in this appeal.

## II.

"The decision whether to permit parties to proceed anonymously at trial is one of many involving management of the trial process that for obvious reasons are committed in the first instance to trial court discretion." *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). Therefore, we review the district court's decision only for abuse of discretion.

We have described three ways a district court can abuse its discretion in considering motions to proceed by pseudonym. First, a district court abuses its discretion when it acts with "a failure or refusal, either express or implicit, actually to exercise discretion, deciding instead as if by general rule, or even arbitrarily, as if neither by rule nor discretion." *James*, 6 F.3d at 239 (citation omitted). Second, a district court abuses its discretion when it fails to "adequately [] take into account judicially recognized factors constraining its exercise" of discretion. *Id.* (citation omitted). And finally, a district court abuses its discretion when its reasoning "is flawed by erroneous factual or legal premises." *Id.* (citation omitted).

## III.

Pursuant to Federal Rule of Civil Procedure 10(a), a civil complaint "must name all the parties." The rule recognizes "the general presumption of openness of judicial proceedings," which has a basis both in common law and in the First Amendment. *See James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993); *Doe v. Public Citizen*, 749 F.3d 246, 265–66 (4th Cir. 2014). We have explained that "[p]seudonymous litigation undermines the public's right of access to judicial proceedings" because "[t]he public has an interest in knowing the names of litigants, and disclosing the parties' identities furthers openness of judicial proceedings." *Public Citizen*, 749 F.3d at 274 (internal citations omitted).

7

Nevertheless, district courts may, in their discretion, allow pseudonymous litigation because "privacy or confidentiality concerns are sometimes sufficiently critical that parties or witnesses should be allowed this *rare* dispensation." *James*, 6 F.3d at 238 (emphasis supplied). To warrant this relief, the circumstances must be "exceptional." *Pub. Citizen*, 749 F.3d at 273.

In *James*, we set out five nonexhaustive factors for district courts to consider when deciding motions to proceed by pseudonym:

> (1) "[W]hether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature";
>
> (2) "whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent nonparties";
>
> (3) "the ages of the persons whose privacy interests are sought to be protected";
>
> (4) "whether the action is against a governmental or private party"; and,
>
> (5) "relatedly, the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously."

6 F.3d at 238. We have also clarified that "a district court has an independent obligation to ensure that extraordinary circumstances support such a request by balancing the party's stated interest in anonymity against the public's interest in openness and any prejudice that anonymity would pose to the opposing party." *Pub. Citizen*, 749 F.3d at 274.

Appellant's memorandum in support of his motion briefly addressed each of the *James* factors, and the district court considered each of Appellant's arguments in its order

8

denying the motion. Nevertheless, Appellant argues the district court abused its discretion by (1) determining that the *James* factors weighed against anonymity, (2) failing to consider irreparable harm to his reputation, and (3) failing to balance Appellant's privacy interest in anonymity against the public's interest in open judicial proceedings. We address each argument, beginning with the *James* factors.

IV.

A.

The first *James* factor is "[w]hether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature." *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). In his motion, Appellant argued that the underlying facts in the case relate to allegations of sexual assault and, "in light of the nature of this case, private and intimate details regarding the lives of John Doe and Jane Doe will be at issue." J.A. 47. He also noted that, in bringing this lawsuit, he "seeks to minimize the harm of Jane Doe's claims," "prevent further harm," and "clear [his] good name." *Id.* Therefore, he argued, "the interests at play here are of a highly sensitive nature" such that this factor should weigh heavily in favor of granting his motion. *Id.* He also argued that he should be allowed to proceed by pseudonym because "[i]f [he] is required to disclose his identity in this litigation, the harm would already be done. [Appellant's] name will forever be publicly associated with allegations of . . . sexual misconduct." *Id.*

The district court accepted Appellant's arguments on this factor and determined that Appellant desired to proceed by pseudonym "in order to preserve his privacy in a matter

9

that is highly sensitive and highly personal," J.A. 57, rather than "merely to avoid the annoyance and criticism that may attend litigation," *James*, 6 F.3d at 238. In doing so, the district court explained that "[n]umerous district courts have recognized a plaintiff's interest in preserving privacy where the allegations concern sexual assault." J.A. 57. The district court cited several cases where plaintiffs were allowed to proceed by pseudonym when they were suing their universities, or officials at their universities, for due process violations resulting from Title IX investigations. *See, e.g.*, *Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:21-cv-378, 2022 WL 972629, at *2 (W.D. Va. Mar. 30, 2022); *Doe v. Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 592–94 (E.D. Va. 2016); *Painter v. Doe*, No. 3:15-cv-369, 2016 WL 3766466, at *6 (W.D.N.C. July 13, 2016); *Doe v. Alger*, 317 F.R.D. 37, 40 (W.D. Va. 2016). Therefore, the district court held that the first factor favored allowing Appellant to proceed by pseudonym.

On appeal, Appellant agrees that the district court's determination on this factor was correct. But he takes issue with the fact that the district court made no express determination as to the weight of this finding. But we have only required that district courts *consider* the *James* factors, and we have not prescribed any particular weight to any individual factor. Rather, we have entrusted district courts to consider each case individually to discern which factors should -- in their discretion -- weigh most heavily. *See James*, 6 F.3d at 242–43. The district court considered this factor, and we find no abuse of discretion in its failure to note the particular weight it attributed to it.

10

B.

As to the second factor -- risk of harm -- Appellant argued to the district court that "if his identity is disclosed, [he] *could be* targeted for retaliatory physical or mental harm based solely on the accusation of sexual misconduct." J.A. 48 (emphasis supplied). He pointed to "the current social climate," as well as the fact that Appellee "spread false and highly damning claims . . . to classmates, friends, and Tulane's administration." *Id.* Thus, he argued that even a finding that Appellee did in fact defame him would not "change the damage done if his request for anonymity is denied" because he will have "to live with this public reputation" which "would be detrimental to [his] physical and mental health." *Id.* Appellant also argued, without further discussion, that "it would be harmful to publicize the names of the female accusers as it would subject them to unwanted scrutiny, harassment, and ridicule." *Id.* (quoting *Doe v. Va. Polytechnic Inst. & State Univ.*, 2022 WL 972629, at *2).

In its opinion, the district court recognized that due to "the inflammatory nature of sexual misconduct, the mere accusation . . . if disclosed, can invite harassment and ridicule." J.A. 57 (internal quotation marks omitted) (citation omitted). But the district court determined that Appellant failed "to produce 'evidence to support more than a mere general fear of retaliation or mere embarrassment.'" *Id.* (quoting *Student A. v. Liberty Univ., Inc.*, 602 F. Supp. 3d 901, 920 (W.D. Va. 2022) (internal quotation marks omitted)). And the district court noted that there did not appear to be any "aggravating factors" such as media exposure that would endanger Appellant if his identity was known. J.A. 58. Finally, the district court explained that while Appellant expressed "concern[] about the

11

potential harm to Jane Doe and Sue Roe" if *their* identities were revealed, "that consideration does not affect whether the court should allow *plaintiff* to pursue this action pseudonymously." *Id.* (emphasis supplied). Therefore, the court determined that this factor was neutral in its analysis.

On appeal, Appellant argues that his case "is distinguishable from the garden-variety defamation case because it centers around false and defamatory statements made within the context of a Title IX disciplinary proceeding and [Appellee's] use of that proceeding to exact revenge against [Appellant]." Appellant's Opening Br. 28. And again, Appellant points to various courts allowing plaintiffs to proceed by pseudonym when they are suing their universities to challenge Title IX proceedings in order to argue that he has a valid privacy interest. Appellant argues it was error for the district court to find this factor to be neutral, rather than in his favor, because it added an "evidence requirement" that required him to produce evidence of more than a general fear or of aggravating factors, and it did not consider the risk to Appellee and Sue Roe.

We begin with Appellant's argument that the district court relied on an erroneous legal premise -- the additional "evidence requirement" -- and his argument that its conclusion that he had failed to supply evidence "was grounded in [an] erroneous factual premise" because the Complaint "alleges that [Appellant] had already experienced retaliation." Appellant's Opening Br. at 30–31.

The district court was required to consider "whether identification poses a risk of retaliatory physical or mental harm." *James*, 6 F.3d at 238. We do not find that the district court abused its discretion in looking for evidence of a risk beyond Appellant's bare

12

assertion that he *could be* targeted for retaliation if his name were public. Other courts have done the same. *See e.g.*, *Doe v. Alger*, 317 F.R.D. 37, 40 (W.D. Va. 2016) (finding evidence of a risk of harm where the plaintiff had demonstrated that there was press coverage of his case in a "relatively small community"); *Student A. v. Liberty Univ., Inc.*, 602 F. Supp. 3d 901, 920 (W.D. Va. 2022) (explaining that the plaintiffs "argued and provided evidence to support more than a mere 'general fear' of retaliation"); *Freedom From Religion Foundation, Inc. v. Cherry Creek Sch. Dist. #5*, No. 07-cv-02126-MSK, 2009 WL 2176624, at *6 (D. Col. July 22, 2009) (explaining that "the unsubstantiated potential for an adverse public reaction" was insufficient where the plaintiffs had "not presented any evidence that reflects disapproval . . . or suggests they would be the target of actual threats, harassment or retaliation"); *Qualls v. Rumsfeld*, 228 F.R.D. 8, 12 (D.D.C. 2005) ("fears of embarrassment or vague, unsubstantiated fears of retaliatory actions . . . do not permit a plaintiff to proceed under a pseudonym"); *Doe v. Beaumont Indep. Sch. Dist.*, 172 F.R.D. 215, 217 (E.D. Tex. 1997) (denying use of pseudonym where the record contained no "other factors" or "threats of violence" to support the plaintiff's argument that "it has happened before, therefore it *might* happen here").

In other words, district courts routinely look for "aggravating factors" or "evidence" as a means to determine whether a risk of harm truly exists. Because we cannot see how a district court could properly weigh this factor based on nothing more than a bare assertion of risk, we find no abuse of discretion in the district court's decision to look for additional evidence or aggravating factors to corroborate Appellant's claim.

13

As for Appellant's arguments that the district court relied on an "erroneous factual premise" in determining he had not provided sufficient evidence of a risk of harm, Appellant points to facts he alleged in the Complaint that show he had already experienced retaliation. He argues on appeal that the Title IX investigation itself was retaliation; "the further spread of false allegations . . . is ever present"; students "across Tulane's campus," including students studying abroad, had heard the rumors; and his friends had told his parents it was not safe for him at Tulane, so his mom flew there to take him home.[7] Appellant's Opening Br. at 31. Appellant also argues on appeal that his Complaint made clear that he had "already suffered emotional distress, reputational harm, loss of educational and career opportunities and psychological damages." *Id.*

Critically, though, Appellant did not present any of these arguments to the district court in his motion or supporting memorandum. Instead, he argued only that "[i]f his identity is disclosed, [he] *could be* targeted for retaliatory physical or mental harm" and that "having to live with this public reputation would be detrimental to [his] physical and mental health." J.A. 48 (emphasis suppled). The district court correctly noted that Appellant did not provide any evidence to support these fears, and these bald allegations are not sufficient.

---

[7] While Appellant's Complaint does allege that his friends thought he was not safe at Tulane, he made no attempt in his motion or in this appeal to explain why revealing his name in this lawsuit would put him at risk. Indeed, it seems that Appellant believes his identity is already well known in connection with these allegations on the Tulane campus. Moreover, Appellant has included so many details about his identity in his Complaint that, arguably, he could be readily identified in any event, especially by those in the Tulane community.

14

Finally, Appellant argues that the district court's determination that the second factor was neutral was based on an erroneous legal premise. Specifically, Appellant argues that the district court erred when it held that the risk to Appellee and Sue Roe if *their* identities were disclosed was irrelevant to its determination of whether *Appellant* should be allowed to use a pseudonym. Appellant argues that the risk to Appellee and Sue Roe was not irrelevant because district courts are expressly instructed to consider the risk to third parties, and he argues that he requested pseudonymity for Appellee and Sue Roe in his motion in order to protect them.

Appellant's arguments fail here too. While Appellant did use pseudonyms for Appellee and Sue Roe and suggested that they be identified by those names consistent with the Complaint, he repeatedly only asked for leave to proceed as a pseudonymous plaintiff. While courts are permitted to consider the risk to third parties if the *party seeking* anonymity is identified, Appellant did not argue that Appellee and Sue Roe were at risk if *his* identity was public. Rather he argued that "it would be harmful to publicize the names of the female accusers. . . ." J.A. 48. The district court was correct -- that consideration is not at issue and is irrelevant to whether Appellant should be allowed to use a pseudonym. It is also worth noting that Appellee does not seek anonymity herself. To the contrary, Appellee has identified herself using her real name in public court filings in both the district court and this court.[8]

Thus, the district court did not abuse its discretion in considering "risk of harm."

---

[8] Nevertheless, for purposes of this appeal, we have not identified Appellee by name.

15

## C.

The district court determined that the third factor, age, weighed against Appellant because "all parties are adults, and therefore not minors entitled to special protection based on age." J.A. 58. Although Appellant had argued in his motion that this factor should be neutral because "some courts have stated that being over eighteen years old should not be held against a college student," *id.* at 48, he does not challenge the district court's holding on appeal.

## D.

For the fourth factor, whether the action is against a governmental or private party, Appellant recognized in his motion that he was suing a private party and that courts are less likely to allow anonymity in that scenario because "actions against private individuals may harm their reputation." J.A. 49. Nevertheless, Appellant argued he should be permitted to use a pseudonym because Appellee's identity could be protected and "the only information the public needs . . . is that they were all students at Tulane." *Id.* In Appellant's view, "this factor is neutral, at worst." *Id.*

The district court, however, disagreed and determined that the fourth factor "weighs significantly against allowing [Appellant] to proceed pseudonymously" because he is suing only a private individual. J.A. 59. "When a plaintiff accuses an individual of wrongdoing, '[b]asic fairness dictates that those among the defendants' accusers who wish to participate in this suit . . . must do so under their real names.'" *Id.* (quoting *S. Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979)). The district court was also particularly concerned that "[i]t would be fundamentally unfair for

16

[Appellant] to be able to 'clear his name' and wield a potential [judgment] against [Appellee] but hide under a shield of anonymity if unsuccessful." J.A. 59.

On appeal, Appellant argues that this factor "does not carry significant weight." Appellant's Opening Br. at 33. Appellant points to several Title IX cases to claim that district courts have allowed plaintiffs to use pseudonyms "in cases involving private parties" even if they held that this factor weighed against anonymity. *Id.* (*citing Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:18-cv-170, 2018 WL 5929647, at *3–4 (W.D. Va. Nov. 13, 2018); *Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:19-cv-00249, 2020 WL 1287960, at *4–5 (W.D. Va. Mar. 18, 2020); *Doe v. Va. Polytechnic Inst. & State Univ.*, 2022 WL 972629, at *2; *B.R. v. F.C.S.B.*, No. 1:19-cv-00917, 2020 WL 12435689, at *26 (E.D. Va. Mar. 10, 2020)).

Not so. Significantly, these cases all differ from the case at hand because the plaintiffs in them were suing *both* public universities *and* private individuals, and, in many instances, the individuals were sued in their official capacities. Even still, the courts in these cases all found that the fourth factor was neutral or weighed against allowing anonymity because of the inclusion of private parties -- the more private parties (sued in their individual capacities), the more likely the courts were to find that the factor weighed against the plaintiff. Thus, the district court's determination here that this factor weighs significantly against allowing anonymity when Appellant is *only* suing a single individual is in line with all of the relevant precedent, despite Appellant's argument to the contrary.

In any event, Appellant does not challenge the district court's holding that this factor weighs against pseudonymity -- rather, he only takes issue with the fact that the court said

17

it "weighs *significantly* against" anonymity.  Appellant claims that this determination "appears to be grounded in a general disapproval of party anonymity in cases where private parties are involved, rather than consideration of the relevant case law and the specific circumstances of [Appellant's] case."  Appellant's Opening Br. at 36.  Appellant cites only to *James* and does not elaborate on this argument further.

In *James*, this court was concerned that the district judge acted by "general rule" rather than "a true exercise of discretion."  6 F.3d at 239.  The record in *James* indicated that the judge had "a flat rule of general application based upon [a] strongly felt personal predilection" that "no party or witness may testify at trial except under his or her true name."  *Id.* at 240.  And the district court in that case had failed to conduct a "particularized assessment of the equities involved."  *Id.* at 239.  No such facts exist here.  The district court below thoroughly considered all the factors and the arguments made by Appellant and determined -- consistent with the weight of authority -- that suing only a private individual weighs against anonymity.  We do not find any abuse of discretion in that conclusion.

E.

Finally, as to the fifth *James* factor, the district court was required to consider the risk of unfairness to Appellee if it allowed Appellant to proceed anonymously.  Appellant's motion argued only that there was no risk of unfairness to Appellee because she "is well aware of [Appellant's] identity, as [Appellee] was party to the investigation process conducted by Tulane, during which his identity was disclosed."  J.A. 49.  The district court accepted this point, but it explained that "there are other sources of significant unfairness

18

or risk of prejudice against [Appellee]." *Id.* at 59. "This risk stems not only from [Appellant's] use of pseudonym for himself, but also from [his] use of pseudonyms and initials throughout the complaint." *Id.* at 59–60. The district court was concerned that "this pervasive anonymity could lead to difficulty and confusion for [Appellee] during discovery," so it held that this factor weighed against allowing Appellant to proceed by pseudonym. *Id.* at 60.

On appeal, Appellant argues that the district court's concern about difficulty and confusion in discovery was an "erroneous factual premise" because Appellant "did not represent to the District Court that he was unwilling to conduct discovery using [] real names . . . which could easily be dealt with through a protective order." Appellant's Opening Br. at 36–37. And he argues that all individuals identified in the Complaint are known to Appellee.

Once again, however, Appellant never made either of these arguments to the district court. Appellant's motion failed to recognize that there could be any risk of unfairness in discovery -- he did not make any argument that anonymity could be dealt with in discovery or at trial, nor did he argue that the others in the complaint were known to Appellee. But the district court, knowing that it would need to manage the entire case if it granted Appellant's motion, rightly noted its concerns in its order.

### F.

Considering the district court's entire analysis of the *James* factors, we conclude that the district court did not abuse its discretion because it did not rely on incorrect factual or legal premises, nor did it give any indication that it was acting by general rule. Instead,

19

the district court conducted a thorough, case specific analysis when it exercised its discretion.

## V.

Next, Appellant argues that the district court abused its discretion because it "failed to consider a significant factor in cases brought by persons falsely accused of sexual assault—the irreparable harm that [Appellant's] reputation would suffer if his identity is disclosed in an action through which he is seeking to clear his name." Appellant's Opening Br. at 25. Appellant bases his argument on the idea that the *James* factors are not exhaustive, and he points to other cases where courts have considered irreparable harm, such as in *Doe v. Alger* where the plaintiff specifically "argue[d] that there is another factor relevant to this case that weighs in favor of anonymity—irreparable harm to his name." 317 F.R.D. 37, 42 (W.D. Va. Mar. 31, 2016). But here, Appellant made no argument about his reputation apart from the *James* factors, so there was no reason for the district court to consider it separately.

## VI.

Appellant also argues that the district court "failed to balance [Appellant's] interest in anonymity against the public's interest in open judicial proceedings" as required by *Public Citizen*. Appellant's Opening Br. at 39 (citing *Doe v. Public Citizen*, 749 F.3d 246, 273 (4th Cir. 2014)). On the contrary, the district court dedicated the last two pages of its order "return[ing] to the Fourth Circuit's broad admonition that [it] must balance [Appellant's] stated interest in anonymity against the public's interest in openness." J.A. 60–62.

20

In its order, the district court held that extraordinary circumstances that would warrant pseudonymity are not present here. It recognized that Appellant had argued "there is no public interest in the public learning his identity or the identities of others," but noted that Appellant had "fail[ed] to address the risk that pseudonymous lawsuits have in eroding public access to proceedings." J.A. 60. Appellant similarly argues on appeal that the crucial interests served by open judicial proceedings are not compromised by allowing a party to proceed anonymously. We have held just the opposite: "Pseudonymous litigation undermines the public's right of access to judicial proceedings. The public has an interest in knowing the names of the litigants and disclosing the parties' identities furthers openness of judicial proceedings." *Pub. Citizen*, 749 F.3d at 273 (internal citations omitted).

Appellant's central argument on appeal is that his case "center[s] around a confidential Title IX proceeding" so it is different than "the garden variety defamation case" and overcomes any public interest in disclosure of his identity. Appellant's Opening Br. at 40. We disagree. As the district court explained, Title IX challenges have "considerations . . . [that] do not apply here." J.A. 61. Specifically, in those cases, "those accused of sexual assault" were "su[ing] schools or universities pseudonymously when attacking the findings of a university Title IX investigation." *Id.* "Unlike those cases, [Appellant] is not challenging his expulsion from Tulane or arguing that Tulane violated Title IX or due process during the sexual assault investigation." *Id.* Instead, Appellant is suing only a private individual for defamation, and he seeks only declaratory relief and money damages against Appellee. This case is no different than a garden variety

21

defamation case, and it does not present the exceptional circumstances necessary for Appellant to proceed by pseudonym.

Finally, we fail to see how Appellant can clear his name through this lawsuit without identifying himself. If Appellant were successful in proving defamation, his use of a pseudonym would prevent him from having an order that publicly "clears" him. It is apparent that Appellant wants to have his cake and eat it too. Appellant wants the option to hide behind a shield of anonymity in the event he is unsuccessful in proving his claim, but he would surely identify himself if he were to prove his claims.

The district court considered each of Appellant's arguments, and it carefully balanced Appellant's stated interests against the public's interest in the openness of judicial proceedings as required by *Public Citizen*. It did not abuse its discretion in doing so.

## VII.

The district court did not abuse its discretion when it denied Appellant's motion to proceed as a pseudonymous plaintiff.

*AFFIRMED*